# IN THE SUPREME COURT OF TEXAS

No. 15-0575

EL PASO HEALTHCARE SYSTEM, LTD., D/B/A LAS PALMAS MEDICAL CENTER,
PETITIONER,

v.

LAURA MURPHY, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

**Argued February 8, 2017**

JUSTICE BOYD delivered the opinion of the Court.

El Paso Healthcare System, Ltd., d/b/a Las Palmas Medical Center, appeals from a judgment awarding damages to Laura Murphy on her claims for statutory retaliation and tortious interference. The court of appeals affirmed the trial court's judgment based on a jury's findings that El Paso Healthcare retaliated against Murphy and interfered with her employment contract after she reported that a physician failed to obtain a patient's informed consent. We reverse the court of appeals' judgment and render judgment that Murphy take nothing.

## I.
### BACKGROUND

Laura Murphy is a certified registered nurse anesthetist. Beginning in 2001, Murphy worked as an independent practitioner under contract with West Texas OB Anesthesia in El Paso. West Texas OB had a contract to provide medical staff to El Paso Healthcare's Las Palmas Medical

Center, where Murphy regularly worked in the labor-and-delivery unit. Murphy was not an employee of El Paso Healthcare or Las Palmas, but she was required to obtain the approval of Las Palmas's credentialing committee before working at the hospital. Under these contractual arrangements, Las Palmas would request staffing for particular assignments, and West Texas OB would offer those shifts to Murphy and its other contractors. Neither Las Palmas nor West Texas OB were required to offer Murphy any assignments, and she was not required to accept any assignments that were offered.

While working an overnight shift at Las Palmas, Murphy interacted with a nineteen-year-old patient who was a first-time expectant mother with gestational diabetes. This patient was under the care of Dr. Frederick Harlass, a high-risk-delivery specialist. When Murphy arrived that night, the patient's cervix had not sufficiently dilated to allow for a vaginal birth, and her progress appeared to be stalled. Harlass had advised the patient and nurses that he would deliver the baby by Cesarean section if the patient did not dilate further within a particular amount of time. The patient told Murphy that she was worried about having a C-section. Murphy told the patient that she had the right to "ask the doctor what he wants to do and why he wants to do it." She said, "You remember you have the right to do that. You have the right to say who does what to your body."

By 9 p.m., the patient had not further dilated, and Harlass ordered the C-section. The patient asked to speak with Harlass before she signed the consent form for the procedure. Harlass and another nurse, Olivia Juarez, went into the patient's room to talk to her. Murphy remained outside. Murphy estimated that Harlass was in the room with the patient for four or five minutes. When Harlass came back out, he approached Murphy. He was very angry and said, "I don't have to take this crap." He believed that Murphy had discouraged the patient from consenting to the C-section

2

and, in doing so, had hampered a safe and successful delivery. Harlass explained to Murphy that he "just told [the patient] that if she wanted a brain-damaged or dead baby, it wouldn't be his fault." Murphy asked Nurse Juarez if Harlass really said this to the patient. Juarez confirmed that he had, but added that "he wasn't real nasty about it." Murphy conceded not really knowing what Juarez meant by this. After speaking with Harlass, the patient consented to the C-section. Harlass successfully delivered the baby without complications.

Around 8 a.m. the following morning, Murphy visited with Las Palmas's ethics coordinator. Murphy complained about Harlass's behavior around patients, his tendency to order premature inductions and C-sections, and her belief that he failed to obtain the nineteen-year-old patient's informed consent. She also expressed apprehension about making the complaint, stating that she feared doing so "may become the cause for [her] dismissal." Sometime that same morning, Harlass called West Texas OB and complained that Murphy had interfered with his treatment and management of the patient. Shortly before eleven that morning, a West Texas OB partner left a voice mail for Murphy, telling her that because of complaints by Harlass and another Las Palmas physician, she should not return to work at Las Palmas until further notice. The next day, Murphy sent letters to West Texas OB and to Las Palmas's ethics coordinator, memorializing her recollection of these events.

About a month later, Murphy had still not returned to work, and the chairman of Las Palmas's credentialing committee asked Murphy to attend a meeting. When Murphy inquired about the purpose of the meeting, the committee coordinator refused to say. Fearing the committee would revoke her credentials at Las Palmas, Murphy asked if her attorney could attend the meeting.

3

When her request was denied, Murphy refused to attend the meeting and instead filed this suit against El Paso Healthcare a few days later.

At trial, the court submitted jury questions on Murphy's claims against El Paso Healthcare for statutory retaliation and tortious interference with "the continuation of the business relationship between" Murphy and West Texas OB. The jury found El Paso Healthcare liable on both causes of action and found that Murphy sustained damages of $31,000 in lost wages and $600,000 for past and future emotional pain, mental anguish, loss of enjoyment of life, and damage to her reputation. The trial court entered judgment on the jury's verdict, and the court of appeals affirmed. — S.W.3d —. We granted El Paso Healthcare's petition for review.

## II.
### STATUTORY RETALIATION

Texas Health and Safety Code section 161.135 provides the basis for Murphy's statutory-retaliation claim. It states that hospitals and other health facilities "may not retaliate against a person who is not an employee for reporting a violation of law." TEX. HEALTH & SAFETY CODE § 161.135(a). A plaintiff alleging a violation of this section bears the burden of proof to establish the claim, but the statute provides "a rebuttable presumption that the plaintiff was retaliated against" under specified circumstances. *Id.* § 161. 135(c). One such circumstance arises if, within sixty days "after the date on which the plaintiff made a report in good faith," the hospital "transfers, disciplines, suspends, terminates, or otherwise discriminates against the person." *Id.* § 161.135(c)(1)(B).[1]

---

[1] This provision's full text states that the presumption of retaliation arises if, within sixty days after the plaintiff made a report in good faith, the hospital "transfers, disciplines, suspends, terminates, or otherwise

Based on these provisions, the trial court submitted Murphy's statutory-retaliation claim by asking the jury whether "Murphy's ethics report to El Paso Healthcare . . . [was] made in good faith and [was] a cause of her transfer or adverse employment action." With this question, the court instructed the jury that "good faith" means that: "(1) Laura Murphy believes that the conduct reported was a violation of law; and (2) Her belief was reasonable in light of the training and experience." The court then instructed the jury that, unless rebutted by El Paso Healthcare, the jury could "presume that an adverse personnel action was taken because Laura Murphy reported a violation of the law, if Laura Murphy suffers the adverse employment action within sixty (60) days of making the report." El Paso Healthcare objected to the court's instructions, arguing that the statute requires that Murphy reported conduct that would in fact constitute a "violation of law," not just that she made the ethics report with a reasonable belief that the conduct she complained of violated the law. The trial court overruled the objection, and the jury answered "Yes" to the question.

The court of appeals upheld the judgment based on statutory retaliation, concluding that the record contains "some evidence that Dr. Harlass's conduct violated the law" by failing to obtain the patient's informed consent, and that "Murphy reported a violation of law." — S.W.3d —. Based on these conclusions, the court did not reach El Paso Healthcare's argument that "there is no evidence that Murphy made her report in good faith." — S.W.3d —.

discriminates against the person or a relative *who is a volunteer in the facility or who is employed under the patient work program administered by the department*." *Id.* § 161.135(c)(1)(B) (emphasis added). Murphy was not a volunteer at Las Palmas or employed under a patient-work program, but El Paso Healthcare has not challenged the statute's applicability on that basis. For purposes of this case, we assume—without deciding—that the italicized clause modifies the term "relative" but not the term "person."

El Paso Healthcare argues that the court of appeals erred by upholding the judgment based on evidence that Harlass violated the law and Murphy reported a violation of law because the trial court never asked the jury those questions. Instead, the court asked the jury whether Murphy made her ethics report in good faith, *reasonably believing* that Harlass violated the law. According to El Paso Healthcare, the statute requires the plaintiff to prove that she reported conduct that in fact violated the law, not just conduct that she reasonably believed violated the law, and it treats the person's good-faith reasonable belief merely as a basis for a presumption that the defendant retaliated against the plaintiff. Based on this statutory construction, El Paso Healthcare argues that we must reverse the judgment because the court of appeals affirmed based on a theory the trial court never submitted to the jury. Alternatively, El Paso Healthcare argues that, even if the jury question could be construed to ask whether Murphy reported conduct that in fact violated the law, Murphy provided no evidence that Harlass's alleged conduct as reported was in fact a violation of law. Finally, El Paso Healthcare argues that, even if a good-faith belief that Harlass violated the law were sufficient under the statute, no evidence supports the jury's finding that Murphy reported a legal violation in good faith.[2]

In response, Murphy contends that the statute merely required her to establish that she reported conduct that she reasonably believed in good faith was a violation of law. In support, Murphy relies heavily on this Court's decisions construing the Texas Whistleblower Act. *See* TEX. GOV'T CODE § 554.002(a). The Whistleblower Act prohibits governmental bodies from retaliating

---

[2] El Paso Healthcare does not challenge the finding that it "retaliated" against Murphy or caused her to suffer an "adverse employment action."

6

against an employee "who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." *Id.*[3] In *City of Elsa v. Gonzalez*, this Court declined to decide whether the defendant had actually violated the law because the Whistleblower Act "requires only a good-faith belief that a violation of law has occurred." 325 S.W.3d 622, 627 n.3 (Tex. 2010); *see Univ. of Hous. v. Barth*, 403 S.W.3d 851, 857 (Tex. 2013) (holding that employee's belief that university guidelines were law satisfied the subjective, but not objective, prong of a good-faith belief that he was reporting a violation of law). Murphy points out that courts of appeals have relied on this interpretation of "good faith" in the Whistleblower Act to construe similar "good faith" language in the Health and Safety Code. *See Milford v. Kelsey Seybold Med. Group, P.A.*, No. 11-00-00022-CV, 2000 WL 34233659, at *6 (Tex. App.—Eastland Nov. 30, 2000, no pet.) (not designated for publication) ("We see no reason why a different definition [from that of the Whistleblower Act] should apply to whistleblower claims under the Texas Health and Safety Code."); *Rathjen v. Mental Health Mental Retardation Auth. of Harris Cty.*, No. 01-97-00993-CV, 1998 WL 1989746, at *8 (Tex. App.—Houston [1st Dist.] Aug. 6, 1998, no pet.) (not designated for publication) ("[I]t has been held that an employee who in good faith believes he is reporting a violation of law, regardless of whether his belief is correct, is protected.").

To resolve the parties' dispute, our analysis "begins with the Legislature's words," looking first to their plain and common meaning. *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d

---

[3] The previous version of the statute prohibited retaliation against an employee "who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith." Act of May 23, 1983, 68th Leg., R.S., ch. 832, 1983 Tex. Gen. Laws 4751 (amended 1993) (current version at TEX. GOV'T CODE § 554.002).

864, 865–66 (Tex. 1999). In conducting this analysis, "we look at the entire act, and not a single section in isolation." *Id.* Our "text-based approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014). When the statute's language "is unambiguous and does not lead to absurd results, our search . . . ends there." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 362 (Tex. 2013).

**A. Violation of Law**

Section 161.135's language provides some support for El Paso Healthcare's argument that the statute requires the plaintiff to prove that she reported conduct that in fact violated the law, not just conduct that she reasonably believed violated the law. Subsection (a) expressly prohibits a hospital from retaliating against "a person who is not an employee for reporting a violation of law," and makes no reference to whether a good-faith but incorrect report is sufficient. TEX. HEALTH & SAFETY CODE § 161.135(a). Instead, the section only refers to "good faith" in subsection (c)(1), which creates a rebuttable presumption "that the person was retaliated against" if the hospital takes an adverse action within sixty days after "the plaintiff made a report in good faith." *Id.* § 161.135(c)(1).

On the other hand, subsection 161.135(c)(1)(B) refers only to a "report," and thus necessarily refers back to and incorporates subsection (a)'s reference to the "report[] [of] a violation of law." *Id.* And it does not expressly require the plaintiff to make the report in good faith or condition the presumption on her doing so. Instead, it expressly conditions the presumption on

8

the plaintiff making the report within sixty days, and seems more to *assume* that the report was made in good faith. *Id.* We must read these provisions not only together, but also within the context of the statute as a whole. *Ritchie*, 443 S.W.3d at 867. Doing so, we find clear guidance in the three sections that immediately proceed section 161.135.

As Murphy points out, section 161.132 *requires* all persons "associated" with a hospital or certain other health care facilities to report any conduct by a health-care facility or professional if the person "reasonably believes or . . . knows of information that would reasonably cause a person to believe that the . . . conduct . . . is or might be illegal." TEX. HEALTH & SAFETY CODE § 161.132(b). The next section then requires health-care facilities to require their employees and other associated professionals to attend annual training "in identifying patient abuse or neglect and illegal, unprofessional, or unethical conduct by or in the facility." *Id.* § 161.133(a). Section 161.134 then prohibits a facility from retaliating against "*an employee* for reporting . . . a violation of law." *Id.* § 161.134(a) (emphasis added). And then—as discussed—section 161.135 prohibits a facility from retaliating against "a person *who is not an employee* for reporting a violation of law." *Id.* § 161.135(a) (emphasis added).

Reading these obviously related provisions together, we conclude that the statute promotes reporting all conduct in the health-care context that a reasonable person would conclude constitutes a violation of law. Consistent with that interpretation, we conclude that sections 161.134 and 161.135 promote reporting such conduct by protecting those who make such reports as section 161.132 requires. Construing section 161.135 to only protect a person who reports conduct that is in fact a legal violation but not a person who has a good-faith belief that the conduct violates the

9

law would be inconsistent with the section's statutory context. In light of the statutory context, we reject this construction and conclude that the statute's protections shield the person from retaliation for doing what the statute itself requires. Reading subsections 161.135(a) and 161.135(c)(1)(B) both together and in context within the statute as a whole, we conclude that the statute does not require the plaintiff to prove that the reported conduct in fact violated the law, but instead permits the plaintiff to sue for retaliation if the plaintiff reported a violation of law in good faith.[4]

**B. Good Faith**

We now turn to El Paso Healthcare's alternative argument that no evidence supports the jury's finding that Murphy had a good-faith belief that Harlass violated the law. As the trial court correctly instructed the jury, this question presents a two-pronged inquiry. "'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Wichita Cty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996); *see City of Elsa*, 325 S.W.3d at 626 (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002)) ("This means that Gonzalez must have believed he was reporting conduct that constituted a violation of law and his belief must have been reasonable based on his training and experience.").

The record here undisputedly contains evidence that supports the first prong: Murphy herself testified that she subjectively believed that Harlass did not obtain the patient's informed

---

[4] We agree with El Paso Healthcare that the trial court submitted the claim based solely on the theory that Murphy reported in good faith what she believed to be a violation and never asked the jury whether the reported conduct in fact was a violation of law. In light of our construction of the statute, however, we need not consider El Paso Healthcare's argument that the record contains no evidence that the conduct Murphy reported in fact was a violation of law.

10

consent as the law requires. We agree with El Paso Healthcare, however, that no evidence in the record demonstrates that Murphy's subjective belief was objectively reasonable in light of her training and experience.

Murphy testified that her belief was based on Harlass's statements and demeanor after he left the patient's room. But Murphy admitted that she was not in the room during the "four or five minutes" when Harlass spoke to the patient. She conceded that she did not know what Harlass said to the patient or whether he had properly disclosed the risks to the patient during that time. Juarez, the nurse who was present in the room with Harlass and the patient, told the hospital's ethics officer that Harlass "was professional with the patient and gave her appropriate informed consent." Although Harlass was angry when he left the patient, Murphy admitted that she could only assume that Harlass had scared the patient and could only guess at what he told her. In short, Murphy's conclusion that Harlass did not obtain the patient's informed consent as the law requires was merely conjecture and surmise. Lacking any evidence to support Murphy's subjective conclusion, the record cannot support a finding that Murphy's belief was objectively reasonable. No evidence shows that Murphy reported a legal violation in good faith, and her retaliation claim must fail as a matter of law.

### III.
#### TORTIOUS INTERFERENCE

Even if she cannot recover for statutory retaliation, Murphy argues that the jury's finding of tortious interference also supports at least part of her damages award.[5] Murphy claims that El

---

[5] El Paso Healthcare argues that the tortious-interference claim cannot support any of the compensatory damages the jury awarded. Although Murphy claims in her brief that her tortious-interference claim is an "alternative

Paso Healthcare interfered with her business relationship with West Texas OB by requesting that Murphy not be scheduled at Las Palmas while it conducted its investigation into Murphy's and Harlass's complaints.

Question 3 of the jury charge asked whether El Paso Healthcare "intentionally interfere[d] with the continuation of the business relationship between Laura Murphy and West Texas OB Anesthesia." The jury answered "Yes." El Paso Healthcare contends that it cannot be liable for any such interference because (1) its interference was legally justified, (2) Murphy failed to establish that the interference was independently tortious or unlawful, and (3) no evidence supports a finding that El Paso Healthcare interfered with the terms of Murphy's existing contract with West Texas OB. We reject the first two arguments but agree with the third.

## A. Legal Justification

El Paso Healthcare argues that it cannot be liable for tortious interference because the conduct by which it interfered with Murphy's contract with West Texas OB was legally justified. Legal justification is a defense to tortious interference when "one is privileged to interfere with another's contract" either by "a bona fide exercise of his own rights" or "if he has an equal or superior right in the subject matter to that of the other party." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 691 (Tex. 1989) (citing *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 109 (Tex. 1984); *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 91 (Tex. 1976); *Morris v. Jordan Fin. Corp.*, 564 S.W.2d 180, 184 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)). "The defense of

---

basis for the judgment," she does not address whether the claim supports mental-anguish damages, and instead refers only to the "retaliation" as the cause of her suffering. Because of our disposition of El Paso Healthcare's other issues, we need not address that issue here.

legal justification or excuse," however, "only protects good faith assertions of legal rights." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991). Here, the trial court asked the jury in Question 4 whether El Paso Healthcare "interfere[d] because it had a good faith belief that it had a right to do so," and the jury answered "no." El Paso Healthcare has not challenged that finding here or in the court of appeals. Its failure to do so prevents us from reversing the trial court's judgment on this ground. *See Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."). It therefore cannot rely on its justification defense to defeat Murphy's tortious interference claim.

## B. Independently Tortious or Unlawful Conduct

El Paso Healthcare next contends that it cannot be liable for tortious interference because Murphy did not prove that El Paso Healthcare engaged in any independently tortious or unlawful conduct. Texas law recognizes two types of tortious-interference claims: one based on interference with an existing contract and one based on interference with a prospective business relationship. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 78 (Tex. 2000). Tortious interference with a prospective business relationship requires a finding that the defendant engaged in independently tortious or unlawful conduct; interference with an existing contract does not. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001). El Paso Healthcare contends that Murphy's claim for tortious interference could only relate to a prospective business relationship. It points to evidence that Murphy's contract with West Texas OB was "oral, non-

13

binding," and neither required West Texas OB to assign Murphy any shifts at Las Palmas nor obligated her to work any shifts assigned.

Murphy admits that West Texas OB had no contractual obligation to assign her shifts, that she had no contractual obligation to accept any such assignments, and that either party could terminate their relationship at will. Nevertheless, she argues that their agreement can support a claim for tortious interference with an existing contract.[6] According to Murphy, the jury charge asked only whether El Paso Healthcare interfered with an *existing* contract,[7] and the jury found that it did. Murphy contends that El Paso Healthcare waived its argument that she had to prove independently tortious or unlawful conduct because it failed to object to the tortious-interference question as submitted or to the omission of any question about independently tortious or unlawful conduct.

We need not resolve these issues. Even assuming that (1) the jury found interference with an existing contract; (2) Murphy's agreement with West Texas OB could support a claim for interference with an existing contract; and (3) El Paso Healthcare waived any argument that

---

[6] Murphy relies on our decisions in *Sterner*, 767 S.W.2d at 689 ("[T]he terminable-at-will status of a contract is no defense to an action for tortious interference with its performance."), and *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 (Tex. 1990) ("[T]he terminable upon notice status of the Fowler–Welch contract is not a defense to an action for tortious interference with its performance."). In *Sturges*, however, we suggested (without discussion) that *Sterner* and *Juliette Fowler* involved claims for interference with *prospective* business relations. *See* 52 S.W.3d at 723 & n.57; *see also Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996) (per curiam) (holding that chief of anesthesiology was justified as a matter of law to interfere with subordinate anesthetist's schedule with the hospital, which we referred to as "prospective business relations").

[7] The jury charge asked whether El Paso Healthcare interfered with "the continuation of" Murphy's "business relationship" with West Texas OB. Murphy argues that this question necessarily asked about an existing contract because a relationship "can not 'continue' unless it exists in the first place." The court of appeals agreed with Murphy, holding that "the jury question made clear that Murphy's claim was one for tortious interference with an *existing* business relationship, and there is no doubt that . . . Murphy had an existing business relationship with West Texas OB." — S.W.3d at —.

14

Murphy could only recover for interference with prospective business relations—all issues that we need not and do not decide today—we conclude that no evidence supports the jury's finding that El Paso Healthcare interfered with Murphy's existing contract.

### C. Evidence of Interference

To prevail on a claim for tortious interference with an existing contract, Murphy had to present evidence that El Paso Healthcare induced West Texas OB to "breach the contract," *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995), and thus interfered with Murphy's "legal rights under the . . . contract," *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). Murphy alleged that El Paso Healthcare interfered with her existing contract by causing West Texas OB to remove Murphy from the schedule at Las Palmas and stop assigning her to shifts there. But as Murphy admits, an obligation to provide employment was not a term of Murphy's existing contract with West Texas OB. Although West Texas OB had agreed to pay Murphy at a particular rate on a monthly basis for the hours she worked, it had not agreed to schedule Murphy at Las Palmas, or indeed at any hospital. The evidence does not support a finding that El Paso Healthcare interfered with Murphy's legal rights under her existing agreement with West Texas OB, so Murphy's tortious-interference claim must fail.

### IV.
#### CONCLUSION

Laura Murphy failed to establish that El Paso Healthcare illegally retaliated against her or tortuously interfered with her contract with West Texas OB. We therefore reverse the trial court's judgment and render judgment that Murphy take nothing on her claims.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: April 28, 2017