JERRY E. SMITH, Circuit Judge:
Gloria Almeida and Irma Quiñonez sued their former employer, Fresenius Medical Care ("Fresenius"), for retaliation under Texas law. The district court granted Fresenius's motion for summary judgment. We affirm.
I.
Fresenius provides dialysis treatment to patients with end-stage renal disease. Fresenius offers two forms of dialysis: hemodialysis ("HD"), conducted through the bloodstream, and peritoneal dialysis ("PD"), performed through the lining of the abdomen. Both can be performed in a medical center or at the patient's house. For home hemodialysis ("HHD"), one of Fresenius's nurses trains the patient and a caregiver to perform the dialysis.
The plaintiffs were employed by Fresenius as "Home Therapy Registered Nurses," meaning they could administer dialysis through both the HD and PD modalities. At the time of the events in question, both nurses had worked primarily in PD, and their most recent HD experience was at least two years before.[1] They had worked *878 for Fresenius for 25 and 20 years, respectively.
In 2015, Kimberly Pope became Almeida's and Quiñonez's direct supervisor. Wanting to expand the New Mexico home-therapy portion of Fresenius's business, Pope decided to ask Almeida and Quiñonez to train in HHD work and begin working with a patient in Las Cruces, New Mexico.[2] Pope suspected that they would be resistant to making the 45-mile trip from El Paso, Texas-where they were based-to the HHD patient in Las Cruces. Before she met with the nurses to direct them to train in HHD and begin working with the New Mexico patient, Pope contacted Fresenius's human resources department to inquire what corrective action would be available should Almeida and Quiñonez refuse the assignment.
On February 23, 2016, Pope met with Almeida and Quiñonez to ask them to train in HHD work and then train the patient in Las Cruces. Both nurses refused to accept the assignment, expressing concern that they lacked sufficient training in HHD to meet statutory and regulatory requirements; concern for patient safety; and general opposition to travel and leaving their El Paso patients in the care of other nurses.
After they refused, Pope issued Almeida and Quiñonez individual corrective action documents on March 2, 2016. Both nurses' corrective action forms contained eleven identical action items, including that they attend six classroom training courses on HHD, take an HHD exam, and start working with the Las Cruces patient on April 11, 2016.
Almeida and Quiñonez submitted written objections to their corrective action forms and indicated that they would not follow them. They pointed to their lack of training and potential violations of state dialysis regulations and of Fresenius's policy. Neither nurse attended the first training course as instructed in the corrective action forms.
On March 17, 2016, Pope met with each nurse and issued her a second corrective action form telling her to attend the HHD training courses. The Las Cruces patient was no longer available to be trained in HHD, so the second form omitted a specific start date for working with a patient but generally directed the nurses to "[a]ttend and actively participate" in future patient trainings.
Both nurses again failed to complete any of the mandated trainings, and both were terminated on April 7, 2016. They brought a retaliation claim under Texas law[3] against Fresenius, alleging that they were terminated for refusing to engage in practices they reasonably believed would expose a patient to a substantial risk of harm or would be grounds for reporting them to the Texas Board of Nursing. Fresenius maintained that Almeida and Quiñonez were fired for insubordination. The district court granted summary judgment to Fresenius because it found that New Mexico law applied, and the nurses' claims were brought under Texas law. Alternatively, the court held that the nurses failed to establish but-for causation. We conclude that the district court erred by holding that New Mexico law applied, but it correctly found that the nurses did not establish but-for causation.
*879 II.
A.
A nurse with a Nursing Licensure Compact license "must comply with the state practice laws of the state in which the patient is located at the time care is provided." TEX. OCC. CODE § 304.001, art. 3(c). The district court observed that Almeida and Quiñonez could have been disciplined under New Mexico law if their HHD training and experience did not satisfy its requirements. The court reasoned that, given that the plaintiffs aver that they were fired for protected conduct-namely, refusing to train a patient in HHD based on their belief that it would violate applicable New Mexico experience requirements[4] -New Mexico retaliation law governed the retaliation claim. The court granted summary judgment to Fresenius because the nurses brought their retaliation claim under Texas law.
It is true that the plaintiffs would have been subject to New Mexico experience requirements had they actually trained the Las Cruces patient.[5] But that conclusion is irrelevant to which state's law governs Fresenius's termination of the nurses, whose claim is that Fresenius violated Texas Occupational Code §§ 301.352, 301.4025(b), and 301.413 by firing them for refusing to engage in what the nurses contend was protected conduct. Texas law governs an allegation of retaliation by an employer against employees within Texas. Almeida and Quiñonez were employed by a Texas employer and were disciplined and terminated by their employer in Texas. The district court erred by concluding that New Mexico law applied.
B.
The district court alternatively held that the alleged protected conduct was not a but-for cause of the nurses' terminations. Texas prohibits retaliation against "a nurse who refuses to engage in an act or omission as provided by Subsection (a-1)." TEX. OCC. CODE § 301.352(a)(1). Subsection (a-1) permits a nurse to "refuse to engage in an act or omission relating to patient care that ... violates this chapter or a [Texas nursing] board rule if the nurse notifies the person at the time of the refusal that the reason for refusing is that the act or omission constitutes grounds for reporting the nurse to the board; or is a violation of this chapter or a rule of the board." Id. (a-1). Where a nurse is terminated within sixty days of refusing to engage in conduct which the board or a court determines was authorized by § 301.352, there is "a rebuttable presumption that the person was ... terminated ... for refusing *880 to engage in" such conduct. TEX. OCC. CODE § 301.413(e).
An employee bringing a retaliation claim under the Texas Occupational Code must demonstrate that he would not have been terminated but for his protected conduct. He need not show that his protected conduct was the sole cause of termination but, instead, that "the employer's prohibited conduct would not have occurred when it did" absent the employee's action. Tex. Dep't of Human Servs. v. Hinds , 904 S.W.2d 629, 636 (Tex. 1995).
Given the statutory presumption of retaliation, the question of but-for causation would be close if Pope had issued only the first corrective action, which required plaintiffs to attend training classes, which should not have been problematic. But it also instructed them to "conduct HHD training tentatively scheduled to start April 11, 2016." That directive-requiring the nurses to train a patient independently before gaining three months' experience in HHD-was the basis of the nurses' claim of protected action.
For two reasons, the addition of the second corrective action on March 17 negates any question of but-for causation. First, the second corrective action states that the nurses must "attend" and "participate" in trainings on HHD administration, but it does not state that they must "conduct" a training for a patient. This obviates the concern that the nurses would be left alone with a patient before gaining sufficient experience. Second, the March 17 corrective action does not specify a starting date for the patient's training. Thus, any refusal to complete their educational training cannot be shielded by stating that there was an improper expectation that the plaintiffs begin training patients. Without the firm starting date and the language that the nurses must conduct the patient's training, the nurses cannot demonstrate that, but for refusing to train a patient before gaining three months' experience, they would not have been terminated. Instead, because they refused to take the initial steps of attending HHD training classes, there were sufficient grounds to terminate them for insubordination.
Almeida and Quiñonez object that the training item in the second corrective action referred to "training the patient in home hemodialysis." But that cannot be an accurate reading. As the nurses recognize, the patient was no longer available for treatment by the date of termination. The nurses counter that the patient's unavailability "is not dispositive of whether Fresenius terminated the nurses for their earlier protected conduct." Maybe that is correct, but their refusal to complete any of the non-objectionable training items is dispositive. Refusing to train a patient independently was not a necessary-or but-for-cause of the firings.
In sum, though the district court erroneously held that New Mexico retaliation law applied, the protected conduct Almeida and Quiñonez describe was not a but-for cause of their terminations. The judgment of dismissal is AFFIRMED.

Almeida had not worked in HD for two years, and even then she was only performing tasks similar to PD, not those unique to the HD machine. Quiñonez had not worked in HD for many years.

Almeida and Quiñonez have Nurse Licensure Compact ("NLC") licenses, which is an agreement by which party states recognize nursing licenses from other party states. Texas and New Mexico are party states, so the nurses' Texas licenses are recognized in New Mexico.

The state-court action was removed for diversity of citizenship.

New Mexico follows the Center for Medicaid & Medicare Services regulations, which require three months of experience. Texas requires six months of experience in the specific modality to conduct training in that modality. Fresenius lays out the relevant regulations in great detail to show that the nurses were qualified under both sets of regulations. Either way, Almeida and Quiñonez evidently had a good-faith belief that the training would violate the regulations, and a good-faith belief that their refusal to work with the patient was protected is the proper standard for evaluating their retaliation claim. See e.g. , El Paso Healthcare Sys., Ltd. v. Murphy , 518 S.W.3d 412, 419 (Tex. 2017) (defining good faith to require a reasonable belief that the conduct is protected given the employee's training and experience).

Texas law also allows the state to take adverse action against a nurse with an NLC license for improper conduct in another party state. In other words, if New Mexico disciplined the nurses for training a patient in HHD without the proper experience, then New Mexico's nursing board would be obligated to report that finding to Texas's nursing board, which would then be obligated to take adverse action based on those factual findings. See Tex. Occ. Code § 304.001, art. 5(d).