

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00139-CV

WILLARD HOOD ABERCROMBIE, APPELLANT

V.

ANGELA HIGHTOWER ENTERPRISES, INC. D/B/A ANGELA HIGHTOWER
INCOME TAX SERVICES, APPELLEE

On Appeal from the County Court at Law No. 3
Lubbock County, Texas
Trial Court No. 2020-575-918, Honorable Ann-Marie Carruth, Presiding

April 19, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

This Texas Citizens Participation Act (TCPA) appeal concerns a suit between siblings who allegedly had a less than cordial relationship. One, Angela Hightower, was president of Angela Hightower Enterprises, Inc., (Enterprises), an entity that provided income tax services to the public. The other, Willard Hood Abercrombie, republished or reposted on social media (i.e., Facebook) a purported critique of Enterprises personnel and its fee structure. The post or publication itself is not included in the appellate record, though it supposedly "accused [Enterprises] . . . of grossly overcharging for its tax

preparation services and calling [its] staff 'scammers.'" Enterprises sued Willard and another individual, alleging four causes of action sounding in tortious interference, business disparagement, and defamation. Willard answered. He also invoked the TCPA and moved to dismiss the suit. The trial court denied the motion. That resulted in this appeal wherein Willard contended that the trial court erred in denying his motion. We reverse and remand.

Preliminarily, we address the impact of Enterprises effectively nonsuiting all but the claim of business disparagement levied against Willard. Nonsuiting the three other causes of action occurred when Enterprises amended its original petition to merely levy the allegation of business disparagement against her brother. So amending the petition did not bar application of the TCPA to each of the original claims, however. This is so because a motion to dismiss filed under the TCPA survives a plaintiff's decision to nonsuit claims. *Nobles v. United States Precious Metals, LLC*, No. 09-19-00335-CV, 2020 Tex. App. LEXIS 2553, at *6 (Tex. App.—Beaumont Mar. 26, 2020, pet. denied) (mem. op.); *Barker v. Hurst*, No. 01-17-00838-CV, 2018 Tex. App. LEXIS 4555, at *12–13 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.); *see* TEX. R. CIV. P. 162 (stating that a plaintiff's dismissal of its claims has "no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court"). That said, we proceed with the substantive analysis of the appeal and begin by referring to the standard of review.

The standard we apply and analytical journey in which we engage were recently discussed in *Mesquite Servs., LLC v. Std. E&S, LLC*, No. 07-19-00440-CV, 2020 Tex. App. LEXIS 7485, at *5–7 (Tex. App.—Amarillo Sept. 15, 2020, pet. filed) (mem. op.),

and *Casey v. Stevens*, 601 S.W.3d 919, 922–23 (Tex. App.—Amarillo 2020, no pet). Their reiteration is unnecessary here.

Next, we initially deal with the question of whether Enterprises' claims were based on, related to, or in response to "a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (West 2020) (permitting a defendant to seek dismissal of a legal action based on, relating to, or responding to a party's exercise of the right of free speech, right to petition, or right of association). The litigants conceded that they were and that the Act applied.

The TCPA applying to the claims of Enterprises, we now assess whether the entity established a prima facie case for each. *See id.* § 27.005(c) (West Supp. 2020) (stating that the court may not dismiss the legal action if the party bringing it establishes by clear and specific evidence a prima facie case for each essential element of the claim); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 706–07 (Tex. App.—Amarillo 2018, pet. denied) (stating that in the second step of the analysis, the burden shifts to the plaintiff to establish, by clear and specific evidence, a prima facie case for each essential element of the claim in question). We begin with defamation.

Enterprises accused Willard of engaging in defamation under count four of the original petition.[1] The defamation concerned reference to services being "grossly overpriced" and its staff being "scammers." Whether a communication is defamatory or susceptible to a defamatory meaning is a question of law. *See Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.,* 603 S.W.3d 409, 418 (Tex. 2020); *W. Mktg. v.*

---

[1] *See Batra*, 562 S.W.3d at 710 (stating that to prove a defamation claim, the complainant must show the defendant 1) published a false statement of fact to a third party, 2) that defamed the complainant, 3) with the requisite degree of fault, and 4) the statement caused damages, unless the statements were defamatory per se).

*AEG Petrol., LLC*, No. 07-20-00093-CV, 2021 Tex. App. LEXIS 59, at *25 (Tex. App.—Amarillo Jan. 6, 2021, no pet. h.) (mem. op.). So, we review the matter *de novo*. *See Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.,* 555 S.W.3d 92, 94 (Tex. 2018) (stating that questions of law are reviewed de novo); *W. Mktg.*, 2021 Tex. App. LEXIS 59, at *25. A statement is defamatory when it is reasonably capable of a defamatory meaning, that is, a meaning which tends to diminish the plaintiff's reputation or good name. *See Innovative Block of S. Tex., Ltd.*, 603 S.W.3d at 418–19. It should be derogatory, degrading, shocking, and contain an element of disgrace. *Harwood v. Gilroy*, No. 04-16-00652-CV, 2017 Tex. App. LEXIS 5931, at *15 (Tex. App.—San Antonio June 28, 2017, no pet.) (mem. op.); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355–56 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Unflattering, abusive, annoying, irksome, or embarrassing utterances, or those which only hurt the plaintiff's feelings do not qualify. *Better Bus. Bureau of Metro. Houston, Inc.*, 441 S.W.3d at 356. And, whether it is capable of such a meaning depends upon a reasonable person's perception of the entire publication, not just the individual statement. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000); *W. Mktg.*, 2021 Tex. App. LEXIS 59, at *25. So, the context of the statement is pertinent, which, therefore, requires us to construe the publication as a whole in light of its surrounding circumstances based upon how a person of ordinary intelligence would perceive it. *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (quoting *Turner*, 38 S.W.3d at 114); *W. Mktg.*, 2021 Tex. App. LEXIS 59, at *25–26. In short, context is pivotal because a statement may be false, abusive, unpleasant, or objectionable without being defamatory, given its context or surrounding circumstances. *See Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.).

4

To be actionable, the utterance also must involve a statement of objectively verifiable fact, as opposed to an opinion. *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 Tex. App. LEXIS 8747, at *28 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.). Whether it is one or the other similarly depends on the entire context in which it was made. *See id.*; *Am. Heritage Capital, LP*, 435 S.W.3d at 875. And, resolution of this too is a question of law. *See Maldonado*, 2019 Tex. App. LEXIS 8747, at *28.

Here, the complete social media post is missing from the record. All we have are excerpts from it. They appeared in Angela Hightower's affidavit and consisted of the phrase "grossly overcharging" and the word "scammers."[2] But, again, their context (i.e., the complete post with all its words) was omitted from the affidavit. Nor was it included in any pleading or other bit of evidence. Without that context, we cannot determine whether the statements were verifiable fact or opinion. The situation also prevents us from testing whether a reasonable person would perceive "grossly overcharging" and "scammers" as defamatory.

In short, Enterprises forced the trial court and us to do that prohibited by *Turner*. It placed us in the position of assessing both the defamatory nature of the purported utterance and its status as fact or opinion though the lens of the individual word and phrase found objectionable, not through that of the entire publication. Consequently, the bit of evidence proffered denies us the ability to conduct the requisite analysis, which means it also falls short of the quantum of evidence needed to satisfy the burden mandated under § 27.005(c) of the TCPA.

---

[2] Reference to "grossly overpriced," as opposed to "grossly overcharging," appeared in the original petition. Given the absence of the post itself, we do not know which phrase was actually used.

The missing contextual evidence described above also affects other claims of Enterprises. For instance, the existence of a defamatory statement is also elemental to the claim of business disparagement. *Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 728 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). One is needed to prove it. *Id.*; *Am. Energy Servs., Inc. v. Union Pac. Res. Co.*, No. 01-98-01264-CV, 2001 Tex. App. LEXIS 5543, at *26 (Tex. App.—Houston [1st Dist.] Aug. 16, 2001, no pet.) (mem. op.); *accord Delta Air Lines v. Norris*, 949 S.W.2d 422, 427 (Tex. App.—Waco 1997, writ denied) (observing that non-defamatory statements do not support a claim of business disparagement). So, to the extent that Enterprises failed to illustrate the purported slurs at issue were false and defamatory for purposes of its defamation claim, it did so as well for purposes of business disparagement.

As for the remaining causes of action, we first consider the allegation of tortious interference with prospective business relationships. It requires proof that the defendant's conduct was independently tortious or unlawful. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *W. Mktg.*, 2021 Tex. App. LEXIS 59, at *32–33. The independently tortious conduct in which Willard engaged consisted of "business disparagement and/or defamation," according to Enterprises. In other words, his purportedly defaming and disparaging the business allegedly satisfied the element in question. Yet, as discussed above, the complainant did not establish a prima facie case on those causes of action; that means it also failed to present sufficient evidence of the independent torts underlying its claim of interfering with prospective business relationships.

Tortious interference with existing contracts is the final cause of action involved here. Unlike its cousin discussed in the preceding paragraph, it does not require proof of an independent tort. *See El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). Nevertheless, it does require proof of conduct causing one to breach an existing contract with the complainant. *Id.* at 421–22; *W. Mktg.*, 2021 Tex. App. LEXIS 59, at *30–31. Enterprises proffered evidence of lost clientele allegedly due to Willard's republication of the utterances in question. It, however, cited us to no evidence of any lost client actually breaching an existing contract with Enterprises because of Willard's conduct. It is one thing for past clients to return because they liked the services offered by Enterprises. It is another thing for clients to return because a contract obligated them to do so. If such a contract existed, it was breached when the client failed to return, and Willard's conduct caused that breach, then there may be evidence of tortious interference with existing contracts. But without being contractually obligated to return, a client's decision to seek tax services elsewhere is not the breach elemental to the claim at hand. And, again, we were neither cited to nor did we find evidence of such contracts being breached due to Willard's conduct.

In sum, we sustain Willard's contention that the trial court erred in denying his TCPA motion to dismiss. Consequently, the trial court's ruling is reversed, and we dismiss, with prejudice, the legal action initiated by Enterprises against him. The action is not dismissed with regard to other defendants, however. Finally, we remand the dismissed cause to the trial court for its consideration of attorney's fees, costs, and sanctions pursuant to § 27.009(a) of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West 2020) (stating that when the court

orders dismissal of a legal action under this chapter, it shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action and may award sanctions to the moving party).

Brian Quinn
Chief Justice