# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00004-CV

---

**Rockwall Ranch Property Owners Association, Appellant**

**v.**

**Joseph Gonzales, Daniel Estrada, and Jerry Werlla, Appellees**

---

**FROM THE 433RD DISTRICT COURT OF COMAL COUNTY
NO. C2020-1418C, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In this permissive appeal,[1] Rockwall Ranch Property Owners Association (the Association) appeals from the trial court's order denying the Association's motion for traditional summary judgment. For the following reasons, we affirm the trial court's order.

---

[1] The trial court granted the Association permission to appeal from the trial court's interlocutory ruling, and this Court accepted the appeal. *See Rockwall Ranch Prop. Owners Ass'n v. Gonzales*, No. 03-22-00004-CV, 2022 Tex. App. LEXIS 1732 (Tex. App.—Austin Mar. 11, 2022, order); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(d) (authorizing appeal from "order that is not otherwise appealable" in specified circumstances); Tex. R. Civ. P. 168 (requiring trial court to grant permissive appeal by order that identifies controlling question of law and states why immediate appeal may advance ultimate termination of litigation); Tex. R. App. P. 28.3 (addressing permissive appeals in civil cases).

# BACKGROUND[2]

Rockwall Ranch is a residential subdivision that is subject to dedicatory instruments. In 2005, the Declaration of Covenants, Conditions, and Restrictions (Declaration) governing the subdivision and the Association and the Bylaws of the Association were executed and then recorded in Comal County's real-property records.

The Declaration provides that the subdivision's lot owners are mandatory members of the Association and that Chapter 209 of the Texas Property Code governs the rights and remedies of the Association and the lot owners:

> The provisions of Chapter 209, Texas Property Code, as the same may be amended from time to time, shall govern the rights and remedies of the Association and Owner. In the event of an unintended conflict between this declaration or the Bylaws and applicable law, applicable law shall control and this Declaration and the Bylaws shall be deemed amended accordingly.

*See* Tex. Prop. Code § 209.003 (stating that chapter applies when subdivision's lot owners are mandatory members of property owners' association). The Bylaws provide procedural rules for administering the subdivision, including the role of the Association's Board of Directors (the Board) and the location and required notices for meetings. The Bylaws require an annual meeting and allow for special meetings under specified situations. "Meetings of the Association shall be held at such place as the Board of Directors may determine," each lot has one vote, and "[v]otes may be cast in person or by proxy." The Bylaws are subject to amendment by the

---

**2** Because the parties are familiar with the underlying facts of the case and its procedural history and our analysis is limited to the resolution of questions of law, we do not recite the underlying facts or procedural history in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

members at a regular or special meeting "by vote of two-thirds [of] a quorum of the Outstanding Votes present in person or acting by proxy."

Appellees, who are lot owners in the subdivision, sued the Association after a dispute arose over the Association's actions concerning its negotiation of an easement. Among their allegations, appellees contended that the Association did not comply with its governing provisions regarding meetings and voting. The Association counterclaimed, seeking declarations that (i) its members "may vote by absentee ballot or by electronic ballot if the Board votes to offer such methods," and (ii) "[v]oting may take place outside of a meeting as long as members are afforded notice of at least 20 days."[3]

The Association moved for traditional summary judgment on its counterclaim based on Sections 209.0056 and 209.00592 of the Texas Property Code, which were enacted after the 2005 Declaration and Bylaws. *See* Tex. Prop. Code §§ 209.0056, .00592; *see also* Act of May 24, 2015, 84th R.S., ch. 1183, §§ 9, 14, 2015 Tex. Gen. Laws 3986, 3989, 3991 (currently codified at Tex. Prop. Code §§ 209.0056 and 209.00592). Focusing on the subsections that expressly state that the sections supersede any contrary requirement in a dedicatory instrument, *see* Tex. Prop. Code §§ 209.0056(b), .00592(f), the Association argued that Section 209.00592 established the Board's right to allow absentee or electronic voting "with

---

[3] The Association also sought a declaration from the trial court that the voting requirement of two-thirds of the members did not apply to the granting of the type of easement at issue in the parties' underlying dispute, but this requested relief is not at issue in this permissive appeal.

respect to any voting item" and that Section 209.0056 established that votes "may be cast without an actual in-person meeting."**4**

Section 209.00592 addresses voting rights of owners and states in relevant part,

(a) Subject to Subsection (a-1), the voting rights of an owner may be cast or given: (1) in person or by proxy at a meeting of the property owners' association; (2) by absentee ballot in accordance with this section; (3) by electronic ballot in accordance with this section; or (4) by any method of representative or delegated voting provided by a dedicatory instrument.

(a-1) Except as provided by this subsection, unless a dedicatory instrument provides otherwise, a property owners' association is not required to provide an owner with more than one voting method. An owner must be allowed to vote by absentee ballot or proxy.

* * *

(f) This section supersedes any contrary provision in a dedicatory instrument.

*See id.* § 209.00592(a), (a-1), (f). Section 209.0056 addresses required notices for elections or association votes, with subsection (a) addressing the required notices for "an election or vote taken at a meeting of the owners," subsection (a-1) addressing required notices when the election or vote will not be taken at a meeting, and subsection (b) providing that this section "supersedes any contrary requirement in a dedicatory instrument." *See id.* § 209.0056.

Following a hearing, the trial court denied the Association's motion for summary judgment and then granted its motion for a permissive appeal. In its order granting the permissive appeal, the trial court identified the controlling questions of law as its rulings on the Association's request for declarations that

---

**4** According to the Association, the Board has attempted to conduct votes by absentee ballot, electronically via email, and without allowing proxies.

(1) the Association's members may vote by absentee ballot or by electronic ballot if the Board votes to offer such methods; [and]

(2) voting may take place outside of a meeting as long as members are afforded notice of at least 20 days.

*See* Tex. R. Civ. P. 168 (requiring, among others, trial court's order allowing permissive appeal to identify "controlling question of law as to which there is a substantial ground for difference of opinion").

## ANALYSIS

In its two issues, the Association challenges the trial court's rulings as to the above identified questions of law. Relying on Sections 209.0056 and 209.00592 of the Texas Property Code, the Association argues that its members may vote by absentee or electronic ballot "if the Board votes to offer such methods" and that voting may take place "outside of a physical meeting as long as members are given at least 20-days' notice."

*Standard of Review*

We review the trial court's summary judgment ruling de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a traditional summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

The Association's issues concern statutory construction, which we also review de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Statutory construction "'begins with the Legislature's words,' looking first to their plain and common meaning." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418

(Tex. 2017) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999)); *see also Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (construing text according to "plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results" (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008))). "In conducting this analysis, 'we look at the entire act, and not a single section in isolation.'" *Murphy*, 518 S.W.3d at 418 (quoting *Fitzgerald*, 996 S.W.2d at 865–66). This "text-based approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Id.* (quoting *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014)); *see Creative Oil & Gas, LLC v. Lona Hills Ranch, L.L.C.*, 591 S.W.3d 127, 133 (Tex. 2019). "When the statute's language 'is unambiguous and does not lead to absurd results, our search . . . ends there.'" *Murphy*, 518 S.W.3d at 418 (quoting *Texas Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 362 (Tex. 2013)).

Further, to the extent that the Association's issues require us to interpret the Declaration and Bylaws, we apply general rules of contract construction. *See Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018); *Twin Creeks Golf Grp., L.P. v. Sunset Ridge Owners Ass'n*, 537 S.W.3d 535, 540 (Tex. App.—Austin 2017, no pet.) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). "When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). We generally interpret language within a contract according to its "plain, ordinary, and generally accepted meaning." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 742–43 (Tex. 2020) (citation omitted).

6

*Section 209.00592*

In its first issue, the Association argues that Section 209.00592 authorizes the Board to offer voting by absentee or electronic ballot to its members. *See* Tex. Prop. Code § 209.00592. The Association argues that although the listed methods for voting in Section 209.00592(a) are not required to be offered, they are allowed without the necessity of amending the Declaration or Bylaws. The Association's interpretation of Section 209.00592 is that it "specifically require[s] that such [listed] methods be permitted in every association governed by Chapter 209" without "requir[ing] an amendment to the dedicatory instruments (including bylaws)," but that it also provides that "if a dedicatory instrument provides for another type of representative voting, that may be allowed as well." As support for its proposed interpretation, the Association relies on subsection (f), which states that "[t]his section supersedes any contrary provision in a dedicatory instrument," and the legislature's inclusion of language in Section 209.00593 (a provision addressing the election of board members) that authorizes boards to amend their associations' bylaws "to provide for elections to be held as required by its subsection (a)." *See id.* §§ 209.00592(f), .00593(a), (b). Comparing Section 209.00593(b) with Section 209.00592, the Association argues that the legislature "knew how to include bylaw amendment language[] and did not do so in Section 209.00592."

As a threshold matter, we conclude that the relevant statutory text, the Declaration, and Bylaws are not ambiguous, and thus, we interpret them according to their plain and common meaning. *See Piranha Partners*, 596 S.W.3d at 742–43; *Scott*, 309 S.W.3d at 930.[5]

---

[5] The Association also relies on legislative history to support its proposed interpretation of the statutory language. Because we interpret the statutory provisions based on their clear and unambiguous language, we do not consider the legislative history. *See City of Round Rock*

7

Subsection (a-1) plainly states that, unless a dedicatory instrument provides otherwise, an association is not required to provide an owner with more than one voting method, subject to the requirement that it provide either voting by absentee ballot or proxy. *See* Tex. Prop. Code § 209.00592(a-1). In other words, a dedicatory instrument may offer multiple methods of voting, but it must offer voting by absentee ballot or proxy. The dedicatory instruments here, the Declaration and Bylaws, do not address electronic or absentee ballots, but the Bylaws expressly provide two methods of voting: in person or by proxy. Because the Bylaws expressly provide two methods of voting with one of the methods being by proxy, the Bylaws are not in conflict with Section 209.00592. Thus, it follows that subsection (f) does not apply to supersede the voting methods that are provided in the Bylaws. *See id.* § 209.00592(f).

We also observe that in contrast to the mandatory language in subsection (a-1)— "An owner *must* be allowed to vote by absentee ballot or proxy"—subsection (a) contains permissive language—"the voting rights of an owners *may* be cast or given." *See id.* § 209.00592(a), (a-1); *see also* Tex. Gov't Code § 311.016(1) ("'May' creates discretionary authority or grants permission or a power."), (3) ("'Must' creates or recognizes a condition precedent."). The plain language of the statutory text makes clear that the voting methods listed in subsection (a) are approved for use going forward, but the Association's expanded interpretation of this text—that a board is authorized to utilize each of the voting methods in subsection (a) on an ad hoc basis without regard to its dedicatory instruments—would require us to insert language into the statute that is not there. *See Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (explaining that courts "must enforce the statute 'as written'

*v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013) ("When a statute is clear and unambiguous, we do not resort to extrinsic aids such as legislative history to interpret the statute.").

8

and 'refrain from rewriting text that lawmakers chose'" (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009)); *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 n.41 (Tex. 2007) (stating that courts "should not by judicial fiat insert non-existent language into statutes").

Applying the plain language of Section 209.00592 to the Bylaws, we conclude that the Association did not establish that its members may vote by absentee ballot or by electronic ballot "if the Board votes to offer such methods." In other words, the statute's plain language does not support that the Board can offer these methods if they are not authorized by the Bylaws. We overrule the Association's first issue.

*Section 209.0056*

In its second issue, relying on subsections (a-1) and (b) of Section 209.0056, the Association argues that the owners may vote outside of a "physical meeting as long as members are given at least 20 days' notice." These subsections state in relevant part:

> (a-1) For an election or vote of owners not taken at a meeting, the property owners' association shall give notice of the election or vote to all owners entitled to vote on any matter under consideration. The notice shall be given not later than the 20th day before the latest date on which a ballot may be submitted to be counted.
>
> (b) This section supersedes any contrary requirement in a dedicatory instrument.

Tex. Prop. Code § 209.0056(a-1), (b). As was the case with the relevant statutory text in Section 209.00592, we conclude that the relevant text in Section 209.0056 is not ambiguous, and thus, we interpret it according to its plain and common meaning. *See Scott*, 309 S.W.3d at 930.

The Association argues that subsection (a-1) in and of itself authorizes voting outside of a meeting, but Section 209.0056 is a notice provision. It is titled "Notice of Election

9

or Association Vote" and addresses the required notices for votes to be taken at a meeting of the owners (subsection (a)) and outside a meeting (subsection (a-1)). *See* Tex. Prop. Code § 209.0056(a) (addressing notice requirements for elections or votes at meeting of owners), (a-1) (addressing notice requirements for election or voting of owners not taken at meeting); *see also* Tex. Gov't Code § 311.016(2) ("'Shall' imposes a duty."). When viewed in the context of the other subsections, subsection (b) is directed to notice provisions in a dedicatory instrument that are contrary to the minimum notice requirements in subsections (a) and (a-1), and subsection (a-1) in and of itself does not authorize voting outside of a meeting. *See* Tex. Prop. Code § 209.0056(a), (a-1), (b). It follows that a dedicatory instrument that does not provide for voting outside a meeting is not impacted by the notice requirements in (a-1) and that, in this situation, subsection (b) does not apply. *See id.*

As the trial court explained in its order denying the Association's motion for summary judgment:

> To the extent that a dedicatory instrument requires an amount of notice contrary to the notice required by either subsection (a) or (a-1), it is superseded by this law . . . .
>
> [The Association] assert[s] the existence of language (in this "Notice" statute) that spells out what notice is required for votes not taken at a meeting gives the Association the green light to hold such votes, i.e., *electronic*. Very simply, the "Notice" statute neither expressly or implicitly does any such thing. . . . Rather, Section 209.0056 is clearly intended to address issues of fair notice of elections, and it was not meant, in and of itself, to create or allow any additional methods of voting. Likewise, subsection [(b)] which supersedes provisions to the contrary is designed to affect only such "notice" conflicts.

10

We agree with the trial court's analysis, conclude that the Association did not establish that voting may take place outside of a meeting as long as members are afforded notice of at least twenty days, and overrule its second issue.[6]

**CONCLUSION**

For these reasons, we affirm the trial court's order denying the Association's motion for traditional summary judgment.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Triana, and Theofanis

Affirmed

Filed: April 6, 2023

---

[6] The Association also argues that the provision in its Bylaws that authorizes the Board to determine where meetings are held allows for "votes not taken in person." That provision provides: "Meetings of the Association shall be held at such place as the Board of Directors may determine." The Association argues that this provision allows the Board to hold "virtual" meetings, but that argument is different from the one it made in its motion for summary judgment. Whether the Board may hold a meeting "virtually" is a different question from whether "[v]otes may take place outside of a meeting." Thus, we may not consider the Board's alternative argument as a ground for reversing the trial court's summary judgment ruling. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered grounds for reversal.").

11