**Dissent and Opinion Filed August 20, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-20-00050-CV

**WINSTEAD PC, Appellant**
**V.**
**DEWEY M. MOORE, JR., Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-15858**

# DISSENTING OPINION FROM DENIAL OF
# EN BANC CONSIDERATION

Opinion by Justice Molberg

I. INTRODUCTION

This is an ordinary legal malpractice case—the type you see in countless

courthouses across Texas on any given day. It becomes distinctive here, however,

because the panel's opinion (1) disregards in wholesale fashion long-settled rules

and conventions of construction that inform and govern our interpretation of the

TCPA,[1] and (2) reaches the wrong result when answering the critical question of

---

[1] "TCPA" refers to the Texas Citizens Participation Act, which is embodied in Chapter 27 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The legislature amended the TCPA effective September 1, 2019 for actions filed on or after that date, as Moore's action

when an attorney-agent may move for dismissal under the TCPA based on communications made on behalf of the client-principal when the client sues the lawyer for professional negligence.

At a higher level, the consequences of the panel opinion are broad and apparent. First, the opinion effectively circumvents, if not eviscerates, significant parts of the legislature's 2019 amendments to the TCPA, which had the avowed purpose of narrowing the Act's "seemingly boundless application."[2] Second, the opinion provides a wide avenue for lawyers to use the TCPA against their clients in any typical legal negligence case where a lawyer's communications (including non-communications, apparently) and actions (including inactions, apparently) on behalf of the client are committed to a writing that is later filed with a court or other agency of government. The opinion answers "yes" to the question whether the attorney-agent may move for dismissal under the TCPA based on communications made on behalf of the client-principal.[3] In doing so, it eschews analysis of the unsettling

<hr>

was. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. All citations to the TCPA are to the current version unless otherwise indicated.

[2] Amy Bresnen, Lisa Kaufman & Steve Bresnen, *Targeting the Texas Citizen Participation Act: The 2019 Texas Legislature's Amendments to a Most Consequential Law*, 52 ST. MARY'S L.J. 53, 55 (2020).

[3] We raised this question in *Snell v. Ellis*, No. 05-20-00642-CV, 2021 WL 1248276, at *6–7 (Tex. App.—Dallas Apr. 5, 2021, no pet.) (mem. op.) but did not decide it because the parties had not addressed it. *See id*. at *6. We also restated the question in another way: "[F]or section 27.005(b) purposes, to whom are we to attribute a communication made by an agent on behalf of a principal, when the agent (as TCPA movant) seeks to dismiss the principal's claims against [the agent]?" *See id*. at *6 n.15. Here, we restate the question in a third, and simpler way: For section 27.005(b) purposes, to whom does a communication belong when made in a representative capacity? Unlike in *Snell*, the parties have directly addressed the latter question in their briefing. The panel opinion purportedly answers the question—stating the communications here were Winstead's "because a lawyer's statements on behalf of a client are the lawyer's communications for TCPA purposes"—but the opinion lacks any analysis for this and instead includes only a string cite of cases that, in most instances, do not address the question at all.

tension this creates with long-standing legal principles that say "no" in other contexts.[4]

I requested en banc consideration of this case for many of the reasons discussed herein, but a majority of the Court voted to deny my request. Because the panel opinion conflicts with our prior expressions by disregarding long-standing legal principles and rules of construction relating to the TCPA, and avoids meaningful analysis of, and provides the wrong answer to, the fundamental question regarding communications made in a representative capacity, I dissent from the Court's refusal to consider this case en banc.

## II. BACKGROUND

Winstead PC filed a TCPA motion to dismiss Dewey M. Moore, Jr.'s negligent misrepresentation, legal malpractice, and equitable indemnification claims on the grounds that Moore's claims "relate to" and are "based on" Winstead's exercise of *its* right to petition as defined in the TCPA. Despite Winstead's use of the term "relate to" in its motion, Winstead later agreed the 2019 amendments removed that phrase as a consideration for, and narrowed, TCPA coverage,[5] but disagreed about whether the TCPA nevertheless applied to Moore's claims because they were based on *Winstead's* right to petition. Appropriately, the trial court found

---

[4] *See Snell*, 2021 WL 1248276, at *7 n.18.

[5] In Moore's response to Winstead's TCPA motion, Moore noted, "The amended statute . . . deletes the phrase 'relates to,' which previously appeared in § 27.005(b)." At the hearing on Winstead's TCPA motion, Winstead's counsel stated, "[The TCPA] used to say 'based on, related to, or in response to" or words to that effect. And now [the legislature has] taken out the 'related to' which makes it a little bit narrower."

that Moore's claims were not based on Winstead's right to petition and denied the TCPA motion.

Winstead appealed and raises three issues, the first of which involves TCPA coverage, the only issue reached by the panel. While the parties have never drawn any distinctions between Moore's three claims in their arguments on TCPA coverage, the panel has done so, affirming the trial court's order as to Moore's negligent misrepresentation claim, reversing it as to Moore's legal malpractice and equitable indemnification claims, and remanding the case to the trial court.

Winstead is a law firm that, according to Moore, has represented him in an ongoing attorney–client relationship in various legal matters, both personal and corporate, for nearly twenty years. As the panel opinion notes, in this case, Winstead was hired to assist with various corporate securities matters. Specifically, Winstead was hired "in connection with (a) a private placement of a to-be-created class of preferred securities to accredited investors, and (b) a Tier II Regulation A+ offering of preferred securities."

Certain other information from the record is also worth noting, some of which is not evident from the panel opinion.[6] First, and most importantly, the gravamen of

---

[6] As TCPA proceedings go, the pertinent record is not voluminous. Winstead's TCPA evidence totals thirteen pages and consists of a five-page declaration by the lawyer in charge of Winstead's representation on this matter, along with two exhibits: an engagement letter with attachments, and the Opinion Letter referred to herein. Moore's TCPA evidence includes two affidavits and eleven exhibits; in addition to other items, each affidavit also attached U-5 forms and the SEC Examination Letter, both of which are mentioned in the panel opinion, and the latter of which is discussed herein.

Moore's entire lawsuit is Winstead's failure to act or communicate, namely its failure to perform due diligence before it completed and filed the documents with the SEC. Moore alleges this failure harmed him, and he seeks damages and equitable relief as a result. Moore claims "Winstead failed to competently perform the due diligence and other legal work necessary to ensure that the 2017 Reg D Offering, the 2018 Reg A Offering, and the Opinion Letter were in full compliance with applicable SEC and other laws and regulations."[7]

Second, two of those three documents, the 2017 Reg D Offering and the 2018 Reg A Offering, are not in the record, leaving us to guess as to their specific contents.

Third, the SEC Examination Letter is a fifty-page document that, by all accounts, appears to be one of the most important documents in the case. Moore attached the SEC Examination Letter to his pleading and to the affidavits submitted in connection with his TCPA response, and the parties appear to agree that it is the source from which all of Moore's damages flow.[8] The letter concerns more than

---

[7] Within his individual claims, Moore generally alleges the following: Winstead "breached its duty of care to [Moore] by failing to exercise due diligence and provide the appropriate standard of care in preparing the 2017 Reg D Offering and the 2018 Reg A Offering Memoranda and Opinion Letter" (legal malpractice claim); Winstead made misrepresentations to him that the firm had met its legal standard of care in preparing that information (alternative negligent misrepresentation claim); and because Winstead's breach of its duty of care in the preparation of that information may subject him to future liability, Moore seeks equitable indemnification from Winstead for losses he may incur from future lawsuits as a result of Winstead's breach, if he is sued in his corporate capacities (equitable indemnification claim).

[8] According to Moore's affidavit, the SEC Examination Letter evidences deficiencies that "are a direct result of Winstead's failure to fulfill its duty of care and to perform due diligence in connection with its legal representation."

simply the 2017 Reg D Offering, 2018 Reg A Offering, or Opinion Letter, though that is difficult to tell from the panel opinion.[9]

Fourth, although the panel opinion ignores this, in the trial court, Winstead repeatedly identified the SEC Examination Letter as the single most important item upon which Moore's claims are based. To use Winstead's characterization of and emphasis regarding Moore's claims to the trial court:

> **[A]ll** of [Moore's] claims of liability and cause-in-fact are directly 'based on or in response to' the SEC Exam Report—specifically the SEC's criticisms of IWH's offering statements contained in that Report. . . . The vast majority of the SEC's offering statement criticisms are leveled against the Reg A offering statement. . . . All of [Moore's] claims are therefore 'based on or in response to' TCPA-covered communications in connection with the Reg A offering memoranda.

If this were not enough, in its motion for reconsideration in the trial court, Winstead also stated, "All of [Moore's] alleged injuries flow from the SEC Exam Report." In the same filing, Winstead characterized the "cornerstone" of Moore's complaint as follows:

> In short, the cornerstone of [Moore's] complaint is the SEC Exam Report and, specifically, the SEC's complaints about 'material misstatements' in the Offering Statements.

---

[9] This is reflected in even the single paragraph from which the panel quotes. That paragraph states:

The three capital-raising rounds for IWH securities were presented through an Investor Presentation, dated August 2016 . . . (the '2016 Notes Offering') . . . (the '2017 Reg. D Offering'); and an Offering Circular, dated February 28, 2018, for . . . the '2018 Reg. A Offering') (collectively, the 'Offering Memoranda'). The examination disclosed that the Offering Memoranda contained material misstatements with respect to IWH, the Advisers, and their leadership, including exaggerated, inaccurate, and misleading statements to the potential investors to whom materials were provided.

Significantly here, the SEC Examination Letter is neither Winstead's nor Moore's communication. It is the SEC's communication.

Fifth, on appeal, Winstead—apparently recognizing that it had inadvertently and fatally based its TCPA challenge on communications that were the SEC's and not Winstead's—appears to have shifted its position, arguing in its latest reply brief in this Court that "Moore's claim is 'based on' the Offering Statements." Notably, in the trial court, Winstead characterized the Offering Statements as communications by IWH, not Winstead.[10] Winstead also now claims, without citation or apparent support in the record, that "Moore contends that the Offering Statements are a cause-in-fact of his alleged damages" and his "legal action is therefore 'based on' Winstead's communications 'in connection with an issue under consideration or review by a . . . governmental body.'"

In a mere few sentences, the panel adopts, then agrees with Winstead's new argument, re-characterizes Moore's claims, inherently admits that Winstead's filing

---

[10] In the declaration accompanying its TCPA motion, Winstead's lawyer in charge of the IWH representation stated, "The alleged offering statement misstatements cited in the Exam Report pertain to information provided entirely by IWH or by affiliates [and] relate to factual and financial matters that were exclusively within IWH's knowledge." Remarkably, on the same day it filed its TCPA motion, Winstead filed a rule 91a motion to dismiss Moore's claims, characterizing the offering statements as follows:

> The Reg D and Reg A Offering Statements were not representations by Winstead, but were issued by IWH (if at all). Other than the Opinion Letter . . . the Offering Statements do not contain any opinion or evaluation by Winstead. *Any representations made in the Offering Statements were (a) made by IWH, not Winstead*, and (b) were based on information supplied by IWH, not Winstead. [Moore] cannot blame Winstead for inaccurate representations in the Offering Statements when IWH, by and through its officers like [Moore], was the source of that information. [Emphasis added.]

of documents with the SEC is at best only "related to" Moore's claims, and, despite this, concludes, in *ipse dixit* fashion, as follows:

> Thus, Moore alleges that Winstead negligently prepared three securities documents submitted to the SEC, which caused the SEC to issue the Examination Letter, which in turn caused financial injury to him. This suffices to demonstrate that Moore's legal malpractice claim is based on the three securities documents and thus on Winstead's exercise of its right to petition.

> Although Winstead's alleged negligence may also involve some failures to act or communicate, . . . Moore's petition plainly says that Winstead's actionable negligence included negligence in preparing the three securities documents. We cannot see how Moore could prove his legal-malpractice claim as pleaded without proving up Winstead's preparation of the documents that allegedly triggered the SEC Examination Letter and caused Moore's damages.

### III. APPLICABLE STANDARDS

As an anti-SLAPP statute,[11] the TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The TCPA has a dual purpose: "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see Youngkin v. Hines*, 546 S.W.3d 675, 680

---

[11] The TCPA is an anti-SLAPP statute. "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 282 (Tex. App.—Dallas 2019, pet. denied).

(Tex. 2018) (TCPA is intended to safeguard the constitutional rights of speech, petition, and association "without foreclosing the ability to bring meritorious lawsuits").

We must construe a statute's individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680 (citing *El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017); *Black v. Am. Bankers Ins. Co.*, 478 S.W.2d 434, 437 (Tex. 1972); *Lufkin v. City of Galveston*, 63 Tex. 437, 439 (1885)).

As a matter of statutory construction, we review de novo a trial court's ruling on a TCPA motion to dismiss. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 827 (Tex. App.—Dallas 2020, pet. denied) (op. on reh'g) (citing *Youngkin*, 546 S.W.3d at 680).

Our review of a TCPA ruling generally involves three steps. At step one, the TCPA movant has the burden to demonstrate the legal action is based on or is in response to the party's exercise of the right of association, right of free speech, or the right to petition. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a),[12] 27.005(b);[13]

_____

[12] Section 27.003(a) states: "If a legal action is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b), that party may file a motion to dismiss the legal action. A party under this section does not include a government entity, agency, or an official or employee acting in an official capacity." *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

[13] Section 27.005(b) states: "Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party

–9–

*Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(b)).[14]  Here, Winstead relies solely on the right of petition to sustain its motion.

If the movant meets this burden, the analysis proceeds to step two, where the burden of proof shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(c)).[15]

If the nonmovant satisfies its burden at step two, the analysis proceeds to step three, where the burden of proof shifts back to the movant to establish an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law, resulting in dismissal if the movant does so.  *See* TEX. CIV. PRAC. &

---

demonstrates that the legal action is based on or is in response to:  (1) the party's exercise of (A) the right of free speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by Section 27.010(b)."  TEX. CIV. PRAC. & REM. CODE § 27.005(b).

[14] The 2019 amendments to the TCPA require the movant to show a "communication" is involved when the motion is based on the right of freedom of speech or the right to petition.  *See* TEX. CIV. PRAC. & REM. CODE § 27.001(3), (4).  While this is not expressly true with the right of association, the 2019 amendment re-defining "right of association" nevertheless narrowed the scope of associational rights subject to TCPA coverage.  *See* Bresnen, et al., 52 ST. MARY'S L.J. at 66–71; TEX. CIV. PRAC. & REM. CODE § 27.001(2).

[15] A "prima face case" is "'the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"  *Lipsky*, 460 S.W.3d at 590 (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)).  *Lipsky* notes that "clear" and "specific" in the TCPA context "have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'"  *Id.* (quoting *KTRK Television v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)).  Thus, the term "clear and specific" pertains to the quality of evidence required to establish a prima facie case, and the term "prima facie case" pertains to the amount of evidence necessary for a plaintiff to carry his minimal factual burden to support a rational inference establishing each essential element of a claim.  *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 882 (Tex. App.—Austin 2018, pet. denied).

REM. CODE § 27.005(d); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(d)).

Following the 2019 amendments to the Act, a legal action that "relates to" the exercise of a movant's right of free speech, right to petition, or right of association is insufficient to establish TCPA coverage. Instead, the legal action must be "based on" or "in response to" the exercise of such a right. TEX. CIV. PRAC. & REM. CODE § 27.005(b). In other words, a direct and substantial relationship is required. Thus, we must look to the gravamen of the dispute in determining TCPA applicability. *See Locke Lord LLP v. Retractable Tech., Inc.*, No. 05-20-00884-CV, 2021 WL 1540652, at *4 (Tex. App.—Dallas Apr. 20, 2021, no pet.) (mem. op.) ("Here, although there may be speech related to a matter of political, social, or other interest to the community or a subject of concern to the public, none has to do with the gravamen of the dispute."); *Jordan v. JP Bent Tree LP*, No. 05-19-01263-CV, 2020 WL 6128230, at *6 (Tex. App.—Dallas Oct. 19, 2020, pet. denied) ("[A] nonmovant's reference to a judicial proceeding in a petition does not necessarily establish that a movant has engaged in any communication constituting an exercise of a right to petition under section 27.001(4) or that the nonmovant's claims are based on such communication.")

In conducting our review, we treat the nonmovant's pleadings as generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see Locke Lord*, 2021 WL 1540652, at *4 (citing

–11–

*Hersh*, 526 S.W.3d at 467); *Reed v. Centurion Terminals, LLC*, No. 05-18-01171-CV, 2019 WL 2865281, at *3 (Tex. App.—Dallas July 3, 2019, pet. denied) (mem. op.) (same).   We consider, in the light most favorable to the nonmovant, the pleadings, evidence a court could consider under civil procedure rule 166a,[16] and any supporting and opposing affidavits stating the facts on which the liability or defense is based.   *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Reed*, 2019 WL 2865281, at *3–4 (citation omitted); *Riggs & Ray, P.C. v. State Fair of Tex.*, No. 05-17-00973-CV, 2019 WL 4200009, at *4 (Tex. App.—Dallas Sept. 5, 2019, pet. denied) (mem. op.); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied) (citing, in part, the prior version of § 27.006(a)) (other citation omitted).   We also favor the conclusion that the nonmovant's claims are not predicated on protected expression.   *Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.); *Reed*, 2019 WL 2865281, at *4 (citing *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd)).   In other words, "[w]e cannot 'blindly accept' attempts by the movant to characterize the claims as implicating protected expression." *Damonte*, 2019 WL 3059884, at *5 (citing *Sloat*, 513 S.W.3d at 504).

---

[16] *See* TEX. R. CIV. P. 166a.

–12–

We have previously concluded that the TCPA does not apply to a failure to communicate or to inactions or omissions by the movant. *See Snell*, 2021 WL 1248276, at *6; *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at *5 (Tex. App.— Dallas Aug. 31, 2020, pet. denied) (mem. op.); *Krasnicki*, 583 S.W.3d at 284.

Relatedly, but importantly, we have concluded that a TCPA movant generally may not rely on communications of another when claiming TCPA coverage. *Shields v. Shields*, No. 05-18-01539-CV, 2019 WL 4071997, at *4–5 (Tex. App.—Dallas Aug. 29, 2019, pet. denied) (mem. op.).

We have also determined that "when the pleadings, evidence, and parties' arguments are based on a mix of protected and unprotected activity, and they do not distinguish between the two, a defendant–movant's motion to dismiss under the TCPA should be denied." *White Nile Software,* 2020 WL 5104966, at *5 (rejecting right-of-petition and association-based TCPA claim in case involving legal malpractice and other causes of action); *accord Weller v. MonoCoque Diversified Interests, LLC*, No. 03-19-00127-CV, 2020 WL 3582885, at *4 (Tex. App.—Austin July 1, 2020, no pet.) (mem. op.); *Beving v. Beadles*, 563 S.W.3d 399, 409 (Tex. App.—Fort Worth 2018, pet. denied).

We ascertain and give effect to the legislature's intent as expressed in the language of the statute, considering the specific statutory language at issue and the TCPA as a whole, and we construe the statute's words "according to their plain and

common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)); *see Dyer*, 573 S.W.3d at 424–25.

We may not "judicially amend the TCPA by adding words that are not contained in the language of the statute" because "the statute's text is the alpha and omega of the interpretive process." *In re Panchakarla*, 602 S.W.3d 536, 540–41 (Tex. 2020) (cleaned up).[17]

## IV. DISCUSSION

### (A)

Despite paying reflexive homage to few accepted rules of construction that govern our analysis in any TCPA applicability dispute, the panel readily jettisons those rules in reaching its conclusion with respect to Moore's negligence and equitable indemnification claims.

Even though Winstead has always treated Moore's claims as being unified, the panel reaches two different conclusions on Moore's claims in its step-one analysis, deciding that Winstead demonstrated that Moore's legal malpractice and equitable indemnification claims are based on Winstead's exercise of its right to petition but failed to demonstrate that Moore's negligent misrepresentation claims

---

[17] *See* Jack Metzler, *Cleaning Up Quotations*, 18 J. APP. PRAC. & PROCESS 143 (2017), available at https://lawrepository.ualr.edu/appellatepracticeprocess/vol18/iss2/3 (discussing and explaining the "cleaned up" parenthetical, a way to shorten unnecessarily lengthy citations).

–14–

are so based. A fair reading of Moore's pleading, however, shows little light, if any, between the facts alleged to support all three claims. That the parties considered this to be the case is evident in the briefing that did not parse the facts on a claim-by-claim basis. In such a circumstance, the motion was properly denied in its entirety by the trial court. *See White Nile Software*, 2020 WL 5104966, at *5; *Weller*, 2020 WL 3582885, at *4; *Beving*, 563 S.W.3d at 409.

Next, the panel opinion concludes that Moore's legal malpractice and equitable indemnification claims are based on Winstead's right to petition, even though the gravamen of Moore's complaint is Winstead's failure to act or communicate, namely, its failure to perform due diligence in the time leading up to the filing with the SEC. The panel's conclusion contravenes our prior cases and contradicts our prior expressions that the TCPA does not apply to a failure to communicate or to inactions or omissions by the movant. *See Snell*, 2021 WL 1248276, at *6; *White Nile Software*, 2020 WL 5104966, at *5; *Krasnicki*, 583 S.W.3d at 284.

At the same time, the panel opinion disregards the admonition that we must look to the non-movant's pleadings as the best indicator of the basis of the movant's claims, *see Locke Lord LLP*, 2021 WL 1540652, at *4; *Reed*, 2019 WL 2865281, at *3; *Hersh*, 526 S.W.3d at 467, and improperly characterizes those claims in contravention of our holdings in various cases, including *Thomas v. BioTE Med. LLC*, No. 05-19-00163-CV, 2020 WL 948087, at *3 (Tex. App.—Dallas Feb. 26,

2020, no pet.) (mem. op.), *Damonte*, 2019 WL 3059884, at *5, and others. Here, Moore's pleadings demonstrate that he is complaining of omissions and failures by Winstead that occurred and were complete before anything was ever filed with the SEC, and as such, Moore's claims are not based on or in response to any exercise of a right to petition but instead on conduct that preceded it. In other words, the panel's conclusion contradicts our prior expression in *Locke Lord LLP*, 2021 WL 1540652, at *2–3, where we rejected a movant's TCPA right-to-petition argument in a legal malpractice and breach of fiduciary duty case in part because "the complained-of statements . . . were made prior to the filing."

The panel's error is compounded by its failure to acknowledge Winstead's concession in the trial court that "**all** of [Moore's] claims . . . are directly 'based on or in response to' the SEC Exam Report," which constitutes an admission that Winstead's motion to dismiss Moore's claims is not based upon its own communications, but those of the SEC. As a result, the panel necessarily disregards our precedent that communications of a non-movant, like the SEC, may not form the basis of a movant's TCPA motion to dismiss. *See Shields*, 2019 WL 4071997, at *4–5; *Encore Enters., Inc. v. Shetty*, No. 05-18-00511-CV, 2019 WL 1894316, at *3 (Tex. App.—Dallas Apr. 29, 2019, pet denied) (mem. op.).

At best, Moore's claims merely "relate to" Winstead's claimed right of petition. Under the amended TCPA, that is not good enough.

Only by ignoring and mischaracterizing Moore's pleaded claims and ignoring countless rules of interpretation is the panel able to reach its erroneous result, and only then by implicitly resurrecting the legislatively discarded "relates to" language of a now-dead provision of the prior Act.[18]

(B)

Finally, the panel opinion avoids any analysis of the fundamental question raised in *Snell*—a question that can be expressed in any number of ways, as discussed earlier in this opinion. In *Snell*, one way we expressed the question was: When a principal brings claims against an agent, may the agent move for dismissal under the TCPA based on communications the agent made on behalf of the principal?

In their briefing, the parties addressed the question of whether the three securities documents are to be attributed to Winstead or others.[19] Although two of those three documents are not even in the record (thus leaving us guessing as to their

---

[18] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b). As a result of the amendments that became effective September 1, 2019, those sections require a movant to show a nonmovant's legal action is "based on or in response to" certain TCPA-protected activity, while the earlier versions of those sections required a movant to show a nonmovant's a legal action is "based on, relates to, or is in response to" certain TCPA-protected activity. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 2–3, 2019 Tex. Sess. Law Serv. 684, 685 (noting changes in those sections); *see also Black v. Woodrick*, 2021 WL 1113149, at *2 (Tex. App.—Amarillo Mar. 23, 2021, no pet.) (mem. op.) ("The TCPA was amended effective September 1, 2019, to narrow its application."); *Smith v. Arrington*, No. 07-19-00393-CV, 2021 WL 476339, at *3 (Tex. App.—Amarillo Feb. 9, 2021, no pet.) (mem. op.) ("the TCPA was amended . . . to narrow its application").

[19] Obviously, as noted above, the SEC Examination Letter is the SEC's communication, not Winstead's or Moore's.

–17–

contents), the panel concludes that they are communications[20] as defined in the

TCPA and that the communications are Winstead's. The panel opinion states:

> Thus, under the TCPA, the three securities documents that Winstead prepared were "communications." *See id.* And they were Winstead's communications, because a lawyer's statements on behalf of a client are the lawyer's communications for TCPA purposes. *See Youngkin v. Hines*, 546 S.W.3d 675, 680–81 (Tex. 2018)[21] (involving lawyer's dictation of settlement agreement into the record during trial); *Brenner v. Centurion Logistics LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at \*5–7 (Tex. App.—Dallas Dec. 14, 2020, no pet. h.) (mem. op.)[22] (lawyer allegedly represented client's adversaries in litigation); *see also Winstead PC v. USA Lending Grp., Inc.*, No. 12-20-00172-CV, 2021 WL 1047208, at \*3 (Tex. App.—Tyler Mar. 18, 2021, no pet. h.) (mem. op.) (motion for default judgment); *Jetall Cos., Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at \*4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op.) (settlement communications during pending lawsuit); *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 578–79 (Tex. App.—San Antonio 2019, no pet.)[23] (answer filed in a lawsuit); *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied) (disclosures that lawyer made during court proceedings). *But cf. Snell v. Ellis*, No. 05-20-00642-CV, 2021 WL 1248276, at \*7 & nn.18–19 (Tex. App.—Dallas Apr. 5, 2021, no pet. h.) (mem. op.) (suggesting in dicta that a lawyer's communications on behalf of a client are not the lawyer's communications if the client sues the lawyer based on the communications).

---

[20] The TCPA defines "communication" as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

[21] We rejected this interpretation of *Youngkin* in *Snell*, noting *Youngkin* "involve[d] tort claims brought by a nonclient against an attorney, based in part on statements the attorney made in open court on behalf of his clients." *Snell*, 2021 WL 1248276, at \*8 (quoting *Youngkin*, 546 S.W.3d at 679).

[22] *Brenner* was a fiduciary duty case with doubtful application here, as the lawyer's communications at issue were not made on behalf of the client but on behalf of another and against the client's interests. *See Brenner*, 2020 WL 7332847, at \*5–7. No petition for review has been filed.

[23] Winstead and the panel's reliance on *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 578–79 (Tex. App.—San Antonio 2019, no pet.) is misplaced. That case appears to have turned on the "related to" language under the old TCPA. That term was omitted from the new version of the Act.

This perfunctory conclusion contains no analysis; the string cite is of little utility in this case. None of the cases involve the TCPA provisions at issue here[24] or address the specific question raised in this case or in *Snell*, and many, including *Youngkin*, involved claims by nonclients, actions on behalf of a claimant's adversaries, not a client, or the TCPA's "relates to" provision that existed prior to the 2019 amendments.[25]

The panel's sweeping conclusion is unsupported in law. To the extent this case turns on communications at all, rather than Winstead's failure to perform due diligence before it completed and filed documents with the SEC, practically speaking, the panel opinion has determined that a lawyer (as agent) may appropriate the communications made on behalf of the client in the usual course of representing that client (the principal) as the lawyer's own communications and then later use those communications against the client to secure TCPA protection when the agent is sued. This turns precedent on its head. Put another way, any right to petition in

---

[24] Winstead relies on sections 27.001(4)(B) and 27.001(4)(C) in arguing it exercised a right to petition. Section 27.001(4)(B) defines the exercise of the right to petition as "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." TEX. CIV. PRAC. & REM. CODE § 27.001(4)(B). Section 27.001(4)(C) defines exercise of the right to petition as "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *Id*. § 27.001(4)(C). In contrast, all of the cases cited by the panel involve section 27.001(4)(A)(i) (defining exercise of a right to petition as "a communication in or pertaining to . . . a judicial proceeding").

[25] See *Youngkin*, 546 S.W.3d at 678 (claim by nonclient and applied TCPA before 2019 amendments that removed the "related to" provision from the Act); *Brenner*, 2020 WL 7332847, at *3 (action taken on behalf of parties adverse to non-movant); *Jetall Cos.*, 2020 WL 6435778, at *1 n.1 (claim by nonclient and applied TCPA before 2019 amendments); *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d at 577 n.1 (applied TCPA before 2019 amendments); *Johnson-Todd*, 480 S.W.3d at 606 (claim by nonclient and applied TCPA before 2019 amendments).

this case was, by law, Moore's right, *not* Winstead's. In *Snell*, we suggested that the view taken by the panel here is improper based on "[t]he plain text of [TCPA] section 27.005(b), long-standing rules regarding agency, and our decisions in other contexts." *Snell*, 2021 WL 1248276, at *7, nn. 17-19. We said the following in footnote 18:

> In *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986), the court stated, in part: 'The attorney-client relationship is an agency relationship. The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts; the attorney's negligence is attributed to the client.' (citing *Texas Emp'rs Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961)). In *Wermske*, the court stated, in part: 'The general rule is that the relationship of attorney and client is one of agency. Under this rule, the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents; and his neglect is equivalent to the neglect of the client himself.' 349 S.W.2d at 93. Finally, in *Celanese Corp. v. Sahagun*, we noted, "[C]lients typically have, but do not necessarily exercise, control over the manner and means of their lawyer's performance. But that a client may defer to its lawyer's expertise in executing certain tasks does not render the lawyer any less the client's agent." No. 05-16-00868-CV, 2017 WL 3405186, at *4 (Tex. App.—Dallas Aug. 9, 2017, no pet.) (mem. op.) (citing *Gracey v. West*, 422 S.W.2d 913,916 (Tex. 1968) (attorney-client relationship is also an agency relationship)). Although none of these cases involve the TCPA, we mention them simply to note that it seems inharmonious to attribute an attorney's actions to a client in several contexts but attribute the attorney's communications to the attorney, not the client, in the TCPA context. Put another way, whatever communications [the lawyer] made while purportedly representing [the client's] interests arguably are not [the lawyer's] communications, but [the client's], in the factual context here. They implicate [the client's] right to petition, not [the lawyer's].

*Snell*, 2021 WL 1248276, at *7 n.18.

Then, in footnote 19, we said:

> In other cases, when movants have failed to demonstrate their own exercise of, or have relied on another party's exercise of a TCPA-protected right, we have concluded the TCPA does not apply. *See Shields v. Shields*, No. 05-18-01539-CV, 2019 WL 4071997, at *4–5 (Tex. App.—Dallas Aug. 29, 2019, pet. denied) (mem. op.) (affirming denial of TCPA motion sought by two entities who failed to demonstrate any exercise of the right to petition); *Encore Enters., Inc. v. Shetty*, No. 05-18-00511-CV, 2019 WL 1894316, at *3 (Tex. App.—Dallas Apr. 29, 2019, pet. denied) (mem. op.) (concluding TCPA movant failed to satisfy its section 27.005(b) burden and stating, "the TCPA applies only if the plaintiff's lawsuit is based on, relates to, or is in response to the defendant's . . . exercise of one of the protected rights"). In *Encore Enterprises*, we made it clear that TCPA movants could not rely on communications made by the nonmovant for purposes of satisfying their section 27.005(b) burden. *See Encore Enters., Inc.*, 2019 WL 1894316, at *3. Although we do not decide the issue, in light of these authorities, we question whether a TCPA movant could rely on communications made for a nonmovant, for section 27.005(b) purposes, particularly when the movant is an agent for the principal at the time of the communication.

*Snell*, 2021 WL 1248276, at *7 n.19.

Our sister courts have reached a similar conclusion in comparable contexts. *See, e.g. Sussman v. Old Heidelburg, Inc.*, No. 14-06-00116-CV, 2006 WL 3072092, at *3 (Tex. App.—Houston [14th Dist.] Oct. 31, 2006, no pet.) (mem. op.) (determining lawyer's actions performed for client were "not attributable to him personally") (citing *Ross F. Meriwether & Assocs., Inc. v. Aulbach*, 686 S.W.2d 730, 731 (Tex. App.—San Antonio 1985, no writ)).

Similar to our observations in *Snell*, *Youngkin* does not involve or discuss the specific circumstances before us. Additionally, while the court in *Youngkin* perceived no conflict between the statute's express purposes and the TCPA's

–21–

application in a case involving a nonclient's claims, *see* 546 S.W.3d at 680–81, in this case, with claims by a client, a direct conflict exists with one of the statute's express purposes, as it would frustrate, rather than protect, the rights of a person to file meritorious lawsuits for demonstrable injury.[26]  *See* TEX. CIV. PRAC. & REM. CODE § 27.002.   The practical result will be a flood of TCPA interlocutory appeals arising out of routine legal malpractice claims—surely an absurd result.  *See Dyer*, 573 S.W.3d at 424–25.

## V. CONCLUSION

For the reasons discussed above, I dissent from the refusal to consider this case en banc.  At bottom, the panel opinion serves as an extreme departure from our Court's prior cases and threatens to turn every pedestrian legal malpractice action involving an agency or court filing into a TCPA interlocutory appeal.

/Ken Molberg/
KEN MOLBERG
JUSTICE

200050f.p05

Joined by:  Osborne, Partida-Kipness and Nowell, JJ.

---

[26] This should not be construed as a comment upon the merits or strength of Moore's claims, which I do not address.