# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00090-CV

**Ken Paxton in his Official Capacity as Texas Attorney General and Greg Abbott in his Official Capacity as Texas Governor, Appellants**

**v.**

**American Oversight, Appellee**

FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-22-002976
THE HONORABLE DANIELLA DESETA LYTTLE, JUDGE PRESIDING

## O P I N I O N

In this interlocutory appeal, Ken Paxton, in his official capacity as the Texas Attorney General, and Greg Abbott, in his official capacity as the Texas Governor, appeal from the trial court's order denying their pleas to the jurisdiction in a case brought under the Texas Public Information Act (PIA). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); Tex. Gov't Code §§ 552.001–.353. For the following reasons, we affirm the trial court's order.

## BACKGROUND

In 2022, American Oversight submitted three public-information requests to the Office of the Governor, requesting disclosure of (i) official communications with any non-governmental email address attributed to Governor Abbott from April 2020 to the date the search is conducted ("Abbott Non-Governmental Accounts Request"); (ii) text messages sent or

received by Governor Abbott pertaining to official business from January 1, 2021, to the date the search is conducted ("Abbott Texts Request"); and (iii) email communications between the Office of the Governor and specified external entities, including the National Rifle Association, from May 24, 2022, through June 3, 2022 ("Abbott Gun Groups Request").

In 2021 and 2022, American Oversight submitted four public-information requests to the Office of the Attorney General (OAG), requesting disclosure of (i) email communications sent by Attorney General Paxton or the Solicitor General from January 6 to 8, 2021 ("January 6th Communications Request"); (ii) official communications with any non-governmental email address attributed to Attorney General Paxton from April 1, 2020, through the date the search is conducted ("Paxton Non-Governmental Accounts Request"); (iii) text messages sent or received by Attorney General Paxton pertaining to official business from November 3, 2020, through the date the search is conducted ("Paxton Texts Request"); and (iv) email communications between the OAG and specified external entities, including the National Rifle Association, from May 24, 2022, through June 3, 2022 ("Paxton Gun Groups Request").

The Office of the Governor and the OAG (collectively "Respondents") responded that they had reviewed their files and had no information responsive to the respective Gun Groups Requests. As to the other public-information requests, Respondents wished to withhold information from public disclosure and requested a decision from the OAG about whether the information was within one of the PIA's exceptions to disclosure. *See* Tex. Gov't Code § 552.301 (setting forth procedure for governmental body to request decision from attorney general when "it wishes to withhold from public disclosure"). The OAG's Open Records Division (ORD) issued letter rulings as follows:

- Abbott Non-Governmental Accounts Request: the ORD concluded that the Office of the Governor could withhold information as privileged attorney-client communications, as well as related to pending litigation. *See id.* §§ 552.103 (excepting from disclosure information relating to pending litigation), .107 (excepting from disclosure information subject to attorney-client privilege).

- Abbott Texts Request: the ORD concluded that some information must be withheld based on the Homeland Security Act, *see id.* §§ 418.176–.177 (stating that certain information is confidential relating to act of terrorism or related criminal activity), and that the Office of the Governor could withhold the information marked as related to pending litigation, attorney-client communications, privileged deliberative material, and related to ongoing competitive situations, *see id.* §§ 552.103, .104 (excepting from disclosure information relating to competition or bidding), .107, .111 (excepting from disclosure interagency or intra-agency memoranda that would not be available to party in litigation with agency). After the underlying suit was filed, the Office of the Governor produced redacted text messages in response to this request.

- January 6th Communications Request: the ORD concluded that the OAG could withhold responsive information as privileged attorney-client communications. *See id.* § 552.107. Prior to requesting a letter ruling, the OAG produced two responsive records.

- Paxton Non-Governmental Accounts Request: the ORD concluded that the OAG could withhold information as privileged attorney-client communications. *Id.*

- Paxton Texts Request: the ORD concluded that the OAG could withhold information as privileged attorney-client communications. *Id.* At the time the OAG requested a letter ruling, the OAG produced two responsive records.

In June 2022, American Oversight sued Respondents, seeking a writ of mandamus to compel the disclosure of the requested public information. *See id.* § 552.321 (authorizing suits for writ of mandamus to compel governmental body to make information available for public disclosure when governmental body refuses to supply public information). It contended that the requested records were public information and challenged Respondents' positions that they had produced all responsive information to the seven public-information requests. For example, as to the Abbott Gun Groups Request, American Oversight alleged in its amended petition:

3

62. The Abbott Gun Groups request seeks all electronic communications between Governor Abbott and senior officials, on the one hand, and select individuals and organizations that focus on firearms, on the other hand, for a period of time surrounding the mass shooting in Uvalde, Texas. During this time period, Governor Abbott cancelled an in-person appearance at the National Rifle Association's convention but gave a prerecorded address. *See* Andrew Zhang, *Greg Abbott, Dan Patrick Cancel In-Person NRA Convention Appearances In Wake of Uvalde Mass Shooting*, Tex. Trib., May 26, 2022, https://www.texastribune.org/2022/05/26/greg-abbott-nrauvalde. It is not credible that no senior official in the Governor's Office was communicating with external entities focused on gun advocacy during a period of time that included both a major mass shooting event and the National Rifle Association annual meeting in the state.

Similarly, American Oversight's allegations as to the Paxton Gun Groups Request included, "It is not credible that no senior official in the [OAG] was communicating with external entities focused on gun advocacy during a period of time that involved both a major mass shooting and the National Rifle Association annual meeting in the state." And as to the January 6th Communications Request, American Oversight alleged:

63. The January 6th Communications Request seeks all email communications sent by Attorney General Ken Paxton or Solicitor General Judd Stone during a three-day period of time during which the Attorney General appeared at a political rally in Washington, D.C. *See* Benjamin Wermund, *Ken Paxton at Trump's D.C. Rally: 'We will not quit fighting.'*, Houston Chron., Jan. 6, 2021, https://www.houstonchronicle.com/politics/texas/article/Paxton-Trump-DC-rally-election-2020-georgia-15850073.php. It is highly implausible that a mere two email chains from the Solicitor General were the only communications not made to "facilitate the rendition of professional legal services" on those days.

American Oversight included similar allegations as to each request to support its position that Respondents had not complied with the PIA.

Respondents filed answers and pleas to the jurisdiction based on sovereign immunity and the mootness doctrine. Respondents contended that they had fully complied with the PIA by conducting a search for responsive documents in a diligent manner and in accordance

4

with applicable policies and procedures and releasing the information that the ORD had determined was required to be released. They supported their pleas to the jurisdiction with affidavits from their respective public-information officers and copies of American Oversight's requests for public information, their responses, and the ORD's letter rulings. The affidavits detailed steps taken to conduct a "diligent and good faith search" for responsive information.

American Oversight filed a response to the pleas to the jurisdiction with exhibits, including copies of information that had been provided in response to its requests. American Oversight also filed its amended petition that included additional allegations challenging the correctness of the ORD's letter rulings. American Oversight alleged that the ORD "improperly limited the scope of public information" in the letter rulings and that Respondents' "reliance on those rulings constitutes an improper withholding of responsive records."

Following a hearing, the trial court denied Respondents' pleas to the jurisdiction. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## ANALYSIS

In four issues, Respondents argue that the trial court does not have jurisdiction to issue a writ of mandamus against them, that American Oversight did not meet its burden to affirmatively demonstrate jurisdiction over Respondents, that the trial court erred by refusing to decide jurisdiction without in camera review of documents withheld by Respondents, and that some of American Oversight's claims are moot to the extent that it has already received the documents responsive to those requests.

5

**Standards of Review**

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Whether a trial court has subject-matter jurisdiction is a question of law, and we review a trial court's ruling on a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Where, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider evidence that the parties have submitted when necessary to resolve the jurisdictional issues raised. *See id.* at 227 (citing *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). In this context, a party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings, which we would otherwise presume to be true. *See id.* When, as here, the challenged jurisdictional facts implicate the merits and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *See id.* at 228; *see also University of Tex. v. Poindexter*, 306 S.W.3d 798, 806–07 (Tex. App.—Austin 2009, no pet.) (addressing applicable standards of review depending on whether determination of jurisdictional fact implicates merits). In this context, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue is resolved by the factfinder at trial. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to

6

the jurisdiction as a matter of law. *Id.* at 228; *see also Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) (explaining that "we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction").

Respondents' pleas to the jurisdiction primarily rely on the doctrine of sovereign immunity, which generally bars suits against the State and its agencies or subdivisions absent a clear and unambiguous waiver of immunity by the Legislature. *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018); *see* Tex. Gov't Code § 311.034 (codifying rule). Because immunity from suit implicates a court's subject-matter jurisdiction, it may be properly asserted in a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). When a government defendant challenges jurisdiction based on immunity, the plaintiff must affirmatively demonstrate the trial court's subject-matter jurisdiction by alleging a valid waiver of immunity. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

Respondents' issues also require us to construe statutes, a question of law which we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011) (stating that "construction of a statute is a question of law we review de novo"). We begin with the text's "plain and common meaning." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999)); *see also Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (explaining that courts construe statutory "text according to plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results" (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008))). "In conducting this analysis, 'we look at the entire act, and not a single section in isolation.'" *Murphy*, 518 S.W.3d at 418. This "text-based approach

7

to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Id.* (quoting *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014)).

**Public Information Act**

Before addressing Respondents' issues, we also provide a brief overview of the PIA's purpose and relevant provisions.

"The Texas Legislature promulgated the PIA with the express purpose of providing the public 'complete information about the affairs of government and the official acts of public officials and employees.'" *Muir v. University of Tex. at Austin*, No. 03-22-00196-CV, 2023 Tex. App. LEXIS 4407, at *5–6 (Tex. App.—Austin June 22, 2023, no pet.) (mem. op.) (quoting *Jackson v. State Off. of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011) (quoting Tex. Gov't Code § 552.001(a))). "Under the PIA, upon receiving a request for public information, a governmental body must 'promptly' produce public information for inspection, duplication, or both." *Id.* at *6 (quoting Tex. Gov't Code § 552.221(a)). "This means that a governmental body must produce public information 'as soon as possible under the circumstances,' 'within a reasonable time, without delay.'" *Id.*

The PIA defines "public information" broadly to include "information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business . . . by a governmental body" or "by an individual officer or employee of a governmental body in the officer's or employee's official capacity and the information pertains to official business of the governmental body." Tex. Gov't Code § 552.002(a). Section 552.002 further provides:

(a-1) Information is in connection with the transaction of official business if the information is created by, transmitted to, received by, or maintained by an officer or employee of the governmental body in the officer's or employee's official capacity, or a person or entity performing official business or a governmental function on behalf of a governmental body, and pertains to official business of the governmental body.

(a-2) The definition of "public information" provided by Subsection (a) applies to and includes any electronic communication created, transmitted, received, or maintained on any device if the communication is in connection with the transaction of official business.

*See id.* § 552.002(a-1)–(a-2). "'Official Business' means any matter over which a governmental body has any authority, administrative duties, or advisory duties." *Id.* § 552.003(2-a). And the term "governmental body" is defined to include an "office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members." *Id.* § 552.003(1)(A)(i).

"The PIA excepts information from public disclosure, however, if it is 'considered to be confidential by law, either constitutional, statutory, or by judicial decision.'" *Muir*, 2023 Tex. App. LEXIS 4407, at *6 (quoting Tex. Gov't Code § 552.101). "In turn, the PIA sets forth numerous statutory exceptions to disclosure," *id.* (citing Tex. Gov't Code §§ 552.101–.162), "embrac[ing] the understanding that the public's right to know is tempered by the individual and other interests at stake in disclosing that information," *id.* at *6–7 (citing *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011)). A governmental body wishing to withhold requested information under an exception generally must request a determination from the attorney general confirming that the exception applies. *See id.* at *7 (citing Tex. Gov't Code § 552.301(a)).

Central to this appeal, Section 552.321 of the PIA "waives sovereign immunity for requestors seeking a writ of mandamus to compel a governmental body to make certain

information available for public inspection under certain circumstances." *City of El Paso v. Abbott*, 444 S.W.3d 315, 322 (Tex. App.—Austin 2014, pet. denied); *see Muir*, 2023 Tex. App. LEXIS 4407, at *5–7 (describing PIA's waiver of sovereign immunity). Subsection (a) of Section 552.321 provides:

> A requestor . . . may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision as provided by Subchapter G or refuses to supply public information or information that the attorney general has determined is public information that is not excepted from disclosure under Subchapter C.

Tex. Gov't Code § 552.321(a). "A suit filed by a requestor under this section must be filed in a district court for the county in which the main offices of the governmental body are located." *Id.* § 552.321(b).

**Does the trial court have jurisdiction to issue a writ of mandamus against Respondents?**

In their first issue, Respondents argue that the trial court lacks jurisdiction to issue a writ of mandamus against them because (i) they are executive officers of the State; (ii) by statute, only the Texas Supreme Court has jurisdiction to issue a writ of mandamus against the Attorney General; and (iii) under the Texas Constitution, no court may issue a writ of mandamus against the Governor.[1] Respondents do not argue that they are exempt from complying with the PIA. The plain meaning of "governmental body" as defined in the PIA includes the Office of the Governor and the OAG. *See id.* § 552.003(1)(A)(i) (defining "governmental body" to include offices in executive branch); *cf. id.* § 552.003(1)(B)(i) (expressly excluding judiciary from

---

[1] Respondents did not raise this argument with the trial court, but we consider it because it impacts the trial court's subject-matter jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–96 (Tex. 2012).

definition of "governmental body" for purposes of PIA).  Respondents argue that they are not subject to Section 552.321.  *See id.* § 552.321.

Respondents characterize Subsection (b) of Section 552.321 as a "default rule" that is overcome by Section 22.002(c) of the Texas Government Code and Article V, Section 3(a) of the Texas Constitution and argue that only the Texas Supreme Court may issue a writ of mandamus against an officer of an executive department, except the Governor.  *See* Tex. Const. art. V, § 3(a); Tex. Gov't Code § 22.002(c); *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674 (Tex. 1995).  Section 22.002(c) of the Texas Government Code provides:

> Only the supreme court has the authority to issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the executive departments of the government of this state to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform.

Tex. Gov't Code § 22.002(c).  Citing Section 22.002(c), the Texas Supreme Court in *Sharp* concluded that it alone had jurisdiction to compel an executive officer to perform his duties to disclose requested public information.  904 S.W.2d at 673–74.  The court explained that it was "empowered to grant writs against executive officers because a mandamus proceeding against one of them ordinarily involves questions of general public import."  *Id.* at 674.  The court also determined that "[a]ny exception" to Section 22.002(c)'s rule that district courts generally do not have jurisdiction to issue writs of mandamus against executive officers "would require express statutory authorization by the legislature naming district courts as the proper fora."  *Id.* at 672. As the dissent recognized, the case created a challenge in the context of the PIA because the Texas Supreme Court "has plenty to do without taking upon itself *sole* responsibility

11

for reviewing every open records dispute involving six large state offices." *Id.* at 682 (Hecht, J., dissenting).

After the *Sharp* decision, the Legislature amended the PIA to expressly delegate jurisdiction to the district courts over mandamus actions for violations of the PIA. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 27, 1999 Tex. Gen. Laws 4500, 4511 (codified at Tex. Gov't Code § 552.321(b)). We presume that the Legislature was aware of the *Sharp* decision, and its dissent, when it modified the PIA. *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding) (presuming that "Legislature is aware of relevant case law when it enacts or modifies statutes" and explaining that "'statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.'" (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990))).

Further, when a general provision conflicts with a special or local provision, the "special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." Tex. Gov't Code § 311.026(b). Here, the amendment to the PIA is the later enactment. *See id.*; *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 471 (Tex. 2011) (orig. proceeding) (concluding that Tax Code provisions stating which courts are authorized to provide mandamus relief applies over Section 22.002(c)'s "general provisions and limitations"); *see also Sharp*, 904 S.W.2d at 687 (Hecht, J., dissenting) (recognizing position that PIA provides no relief against Office of Governor would be "incongruous with [the PIA's] scheme of judicial review"). Thus, we

12

conclude that Section 22.002(c) does not deprive the trial court of jurisdiction over American Oversight's PIA claims.[2]

As support for their position that district courts do not have jurisdiction to issue a writ of mandamus against the Attorney General and no court has jurisdiction to do so against the Governor, Respondents also rely on Article V, Section 3 of the Texas Constitution, which provides that "[t]he Legislature *may* confer original jurisdiction on the Supreme Court to issue writs of . . . mandamus in such cases as may be specified, except as against the Governor of the State." Tex. Const art. V, § 3(a) (emphasis added). The plain language of this provision is permissive without mandating that the Legislature take any action. *See, e.g.*, Tex. Gov't Code § 311.016(a) ("'May' creates discretionary authority or permission or a power."). It follows that this provision does not conflict with Subsection 552.321(b)'s express grant of jurisdiction to the district courts—not the Texas Supreme Court—to issue writs of mandamus for violations of the PIA against governmental bodies, which term is defined to include the OAG and the Office of the Governor.[3] *See id.* §§ 552.003(1)(A)(i), .321(b). The PIA's grant of jurisdiction to the district courts is also consistent with Article V, Section 8 of the Texas Constitution, which grants district courts "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8.

---

[2] Based on the plain language of the statutes, we also observe that Section 22.002(c) is directed to acts or duties that an officer is authorized to perform under state law as compared with Section 552.321, which provides relief from a governmental body's failure to comply with the mandatory requirements in the PIA to supply public information when requested.

[3] Respondents do not appear to challenge the constitutionality of Section 552.321.

As support for their argument that no court has jurisdiction to issue a writ of mandamus directly against the Governor to enforce the PIA, Respondents cite an inapposite case from this Court. *See In re Luevano*, No. 03-21-00407-CV, 2021 Tex. App. LEXIS 7154, at *1 (Tex. App.—Austin Aug. 27, 2021, orig. proceeding) (mem. op.). In that case, this Court dismissed an original proceeding seeking a writ of mandamus against the Governor because the petition was filed directly in this Court. *See id.* (citing Tex. Gov't Code § 22.221(b) (addressing writ power of courts of appeals)). We have no mandamus authority against the Governor, except to enforce our jurisdiction. *See* Tex. Gov't Code § 22.221(a). In contrast, the PIA expressly grants jurisdiction to district courts to issue writs of mandamus to compel a governmental body to make information available for public inspection if the governmental body refuses to supply the public information, and Respondents are officers of a "governmental body" for purposes of the PIA. *See id.* §§ 552.003(1)(A)(i), .321; *see, e.g.*, *City of Dallas v. Abbott*, 304 S.W.3d 380, 382 n.2 (Tex. 2010) (observing that only Texas Supreme Court has authority to issue writs of mandamus against Attorney General "[a]bsent express statutory authority providing otherwise" (citing *Sharp*, 904 S.W.2d at 672 (citing Tex. Gov't Code § 22.002(c)))). Had the Legislature intended to carve out an exception for the Governor and Attorney General—as officers in the executive branch—from Section 552.321, it would presumably have expressly stated so. *See Scott*, 309 S.W.3d at 931 (declining to disregard "twenty-one uses of 'party' in surrounding contexts, all of which do not include the Commissioner, in favor of the single use that does" and explaining that to do so would be "precisely the sort of 'exaggerated, forced, or constrained meaning' that we eschew" when interpreting statutes). Instead, the disclosure requirements in the PIA apply uniformly to governmental bodies, which term expressly includes offices within the executive branch, and the district court's jurisdiction to compel those

14

governmental bodies to comply is without exception. *See Murphy*, 518 S.W.3d at 418 (considering provision in context of entire statute).

For these reasons, we conclude that the trial court has jurisdiction to issue writs of mandamus against Respondents in their official capacities as officers of governmental bodies to compel them to produce public information under the PIA. We overrule their first issue.[4]

**Did American Oversight meet its burden to affirmatively demonstrate jurisdiction?**

In their second issue, Respondents argue that American Oversight did not affirmatively plead or demonstrate the trial court's jurisdiction over Respondents "when they offered evidence disproving the allegation that they refused to produce responsive public information." They rely on the evidence that they produced documents in compliance with the ORD's letter rulings.[5] They also argue that American Oversight's petition "speculates that there *should* be more information than it received but makes no concrete allegations about documents that it may reasonably believe have been erroneously or wrongfully withheld" and that American

---

[4] To the extent that Respondents argue that American Oversight's only option was to follow the procedure set forth in Section 552.3215 of the PIA, which provides for declaratory judgment or injunctive relief when a governmental body is violating the PIA, their argument is inconsistent with that section's express language. *See* Tex. Gov't Code § 552.3215. Under that section, a requestor generally must file a complaint with the district or county attorney, and the district or county attorney or the attorney general then may bring the action for declaratory judgment or injunctive relief. *Id.* § 552.3215(c), (e). But the plain language of Subsection 552.3215(k)—expressly stating that an "action authorized by this section is in addition to any other civil, administrative, or criminal action provided by this chapter or another law"—makes clear that this section is not the exclusive option available to a requestor. *Id.* § 552.3215(k).

[5] To the extent that Respondents argue that American Oversight is seeking mandamus relief against the ORD and that its allegations do not support jurisdiction against the ORD, we do not read American Oversight's pleadings to be seeking a separate writ of mandamus against the ORD. We read American Oversight's position to be that it challenges Respondents' refusal to produce responsive documents to the extent that their refusal is based on the ORD's letter rulings.

15

Oversight fails to allege a waiver of sovereign immunity because mandamus relief is only available if the governmental body refuses to supply public information, which requires a showing of "unwillingness" to supply the information.

Respondents rely on this Court's opinion in *City of El Paso v. Abbott*. In that PIA case, this Court reversed the trial court's denial of the City of El Paso's plea to the jurisdiction and rendered judgment that the trial court did not have jurisdiction. 444 S.W.3d at 317. The City's plea was supported with an affidavit that detailed its efforts to comply with the request for public information and asserted that "the City had gathered and turned over 'all responsive information accessible to the City or within the city's control.'" *Id.* at 319. Relying on the meaning of "refuse"—"to 'show or express a positive unwillingness to do or comply with'"— this Court concluded that the City had conclusively established that it was not refusing to supply public information under Section 552.321(a). *Id.* at 324 (citing dictionary definitions of "refuse"). We explained:

> Here, the City's jurisdictional evidence conclusively established that it was willing to supply the requested information and, to the extent that it located it or received it from the individuals named in the request, it actually had done so. Accordingly, the City asserted and supported with evidence that the trial court lacked subject-matter jurisdiction.

*Id.* at 325 (citing *Miranda*, 133 S.W.3d at 228). We also observed that the requestor had not offered "any evidence, or even argument, to controvert or question the City's conclusive evidence that it searched extensively for the requested documents" and "turned over all those documents to [the requestor]." *Id.* at 325–26.

In contrast with the facts in that case, American Oversight challenges Respondents' evidence that their searches complied with the PIA and the correctness of the

16

ORD's letter rulings concluding that Respondents could withhold information responsive to the requests. In this context, by seeking a decision from the ORD that they could decline to produce some of the requested information and then withholding some of the information based on the ORD's letter rulings, Respondents are "refusing to supply that portion of the public information."[6] *See Muir*, 2023 Tex. App. LEXIS 4407, at *11–12 (citing *Kallinen v. City of Houston*, 462 S.W.3d 25, 29 (Tex. 2015) (per curiam)); *see also Kallinen*, 462 S.W.3d at 28 (rejecting interpretation of Section 552.321 that would equate "information that is public with information that has been determined by the Attorney General to be public"); *City of Dallas*,

---

[6] In its briefing to this Court, Respondents represent that they "have produced all responsive, non-privileged records that exist," confirming that they have not produced responsive documents that they have determined are privileged.

In *City of El Paso*, the City withheld certain personal email addresses from public disclosure based on a directive from an attorney general's opinion. *See City of El Paso v. Abbott*, 444 S.W.3d 315, 327 (Tex. App.—Austin 2014, pet. denied) (citing Tex. Gov't Code § 552.137(a)–(c)). The attorney general directed the City that the addresses must be withheld "unless the owners affirmatively consent to their release," and there was no evidence that the owners had consented. *Id.* In that context, we explained, "Given this directive, the City cannot be said to be 'refusing to supply public information that the attorney general has determined is public information.'" *Id.* In contrast, Respondents are withholding information based on exceptions that they could waive, such as the attorney-client privilege. *See, e.g.*, Tex. Gov't Code § 552.107 (excepting information from requirement that it be made available to public based on attorney-client privilege). But to the extent that our analysis in *City of El Paso* supports Respondents' position that a governmental entity is not refusing to supply information when it is following a letter ruling from the ORD, the Texas Supreme Court has since made clear that the trial courts have jurisdiction to review the correctness of the ORD's letter rulings. *See Kallinen v. City of Houston*, 462 S.W.3d 25, 28 (Tex. 2015) (per curiam) (explaining that requirement that governmental body seek ruling from Attorney General when withholding requested information "is check on the governmental body, not a remedy for the requestor to exhaust" and that "City's view of Section 552.321(a) would make the Attorney General's ruling unreviewable"); *see also Harris Cnty. Appraisal Dist. v. Integrity Title Co.*, 483 S.W.3d 62, 68 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (distinguishing *City of El Paso*; explaining that "underlying principle in *Kallinen* is that the trial court has jurisdiction under Section 552.321(a) to consider whether requested information is subject to disclosure, irrespective of whether the Attorney General has issued a ruling addressing that question"; and concluding that trial court had jurisdiction under Section 552.321 to consider whether requested information, which was being withheld based on ORD's letter ruling, was public information subject to disclosure).

17

304 S.W.3d at 384 (explaining that ORD's interpretation of PIA "may be persuasive" but that it "is not controlling" on court); *see, e.g.*, Tex. Gov't Code § 552.323(a)(3) (providing for recovery of attorney's fees against governmental body even when ORD's ruling concluded that information was not public). Thus, American Oversight's undisputed allegations "are sufficient to 'demonstrate a refusal by [Respondents] under PIA [Section 552.321(a)].'" *Muir*, 2023 Tex. App. LEXIS 4407, at *12.

Respondents argue that "*Muir* is distinguishable from this case" because the jurisdictional challenge in that case was limited to a challenge to the pleadings, "some information-withholding [was] inconsistent with guidance from ORD," Respondents' pleas are also based on jurisdictional evidence, and they sought and obtained letter rulings stating which documents were public information. *See id.* at *3–4 (stating that plea to jurisdiction was challenge to sufficiency of pleadings and that pleadings included that university delayed producing information). They argue that American Oversight has not presented evidence to contradict their evidence of compliance with the PIA, including the ORD's letter rulings supporting that the withheld information is privileged or subject to other exceptions. But the evidence is undisputed that Respondents continue to withhold documents responsive to American Oversight's requests, and American Oversight's factual allegations include challenges to the completeness of the information that was produced and the correctness of the ORD's letter rulings concerning the claimed exceptions that Respondents rely on to support their withholding of responsive documents. American Oversight challenges the adequacy of the searches and contends that the affidavits from the public-information coordinators were conclusory and support that the searches were incomplete with significant omissions, that records responsive to its requests were incorrectly categorized as not public information, and that it has identified

18

issues of material fact concerning the claimed exceptions that would allow information to be withheld.

Viewing American Oversight's unnegated factual allegations in its pleadings and the jurisdictional evidence in the light most favorable to it, we conclude that Respondents' jurisdictional evidence has not negated American Oversight's allegations that Respondents have not complied with the PIA, including its allegations describing records that should have been produced but have not been, identifying gaps in Respondents' process for searching for and identifying public information subject to the PIA, and identifying facts that support that the PIA exceptions have been misapplied. *See* Tex. Gov't Code § 552.001(a) (requiring record production under PIA to be "complete"). For example, as to the Paxton January 6th Communications Request, the request sought email communications "(including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments)" during the time that Attorney General Paxton traveled to Washington, D.C., to speak at a political rally. American Oversight alleges that he was there in his official capacity but that no information regarding travel or communications was produced. *See id.* § 552.002(a)(3) (defining "public information" to include information "in connection with the transaction of official business. . . by an individual officer" in his "official capacity"), (a-2) (defining "public information" to include "electronic communication").

As an example of an allegedly improper characterization of information, American Oversight alleges that Respondents improperly limited the definition of the Attorney General's official business as representing the state in civil litigation even though he has other duties. *See id.* § 552.002(a-1) (defining when information is in connection with transaction of official business). Another example involves American Oversight's allegations as to the

19

Respondents' representation that they did not have any information responsive to the Gun Groups Requests. American Oversight's pleadings reference the mass shooting in Uvalde, Texas; Governor Abbott's cancellation of an in-person appearance at the National Rifle Association's convention; and his pre-recorded address at the convention that happened during the time of the requests to support their allegation that Respondents' responses to these requests were incomplete.

At this juncture, we must view American Oversight's unnegated jurisdictional allegations of fact as true and the jurisdictional evidence in the light most favorable to American Oversight. *See Miranda*, 133 S.W.3d at 226–28. Applying these standards, we conclude that American Oversight has affirmatively pleaded and demonstrated a valid waiver of immunity under the PIA. *See Muir*, 2023 Tex. App. LEXIS 4407, at *12; *B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-16-00710-CV, 2018 Tex. App. LEXIS 223, at *11–12 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.) (concluding that Texas Supreme Court had rejected jurisdictional argument that requestor cannot challenge adverse OAG decision and that Section 552.321 of PIA waives governmental immunity by allowing requestor to file suit for writ of mandamus to compel release of public information); *Harris Cnty. Appraisal Dist. v. Integrity Title Co.*, 483 S.W.3d 62, 67–69 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (rejecting governmental entity's argument that trial court lacked jurisdiction under Section 552.321 because Attorney General had determined that requested information was excepted from disclosure under PIA and "[f]ollowing *Kallinen*" to conclude that trial court had jurisdiction under Section 552.321 to consider whether requested information was public information subject to disclosure). Thus, we overrule Respondents' second issue.

20

**Did the trial court err concerning in camera review?**

In their third issue, Respondents argue that the trial court erred by refusing to decide jurisdiction without in camera review of documents withheld by Respondents. Specifically, Respondents argue that the trial court erred by ordering in camera review before establishing its jurisdiction and that it did not need in camera review to conclude that it lacked jurisdiction as a matter of law. *See* Tex. Gov't Code § 552.3221 (addressing trial court's in camera inspection of information and stating that information at issue "may be filed with the court for in camera inspection as is necessary for the adjudication of the case").

Although the trial court in its letter to the parties explaining its ruling on the pleas to the jurisdiction left open the possibility that Respondents could submit additional evidence for in camera review and then file amended pleas, the trial court's order denying the pleas did not require Respondents to submit documents for in camera review but denied Respondents' pleas, expressly stating: "After considering the Pleas (as amended []), Plaintiff's Response to the Pleas, Defendants' Replies, arguments of counsel, and the entire record herein, the Court finds that Defendant Abbott's Plea to the Jurisdiction and Defendant Paxton's Plea to the Jurisdiction should be DENIED." Further, we have concluded that the trial court did not err in denying the pleas because American Oversight affirmatively pleaded and demonstrated the trial court's jurisdiction over its claims against Respondents. In this context, we overrule Respondents' third issue.

21

**Are some of American Oversight's claims moot?**

In their fourth issue, Respondents contend that American Oversight's claims concerning the Abbott Texts Request are moot because Governor Abbott produced the records that the ORD determined were public and subject to disclosure.

"The mootness doctrine—a constitutional limitation founded in the separation of powers between the governmental branches—prohibits courts from issuing advisory opinions." *Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021) (citing *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). "A case becomes moot when (1) a justiciable controversy no longer exists between the parties, (2) the parties no longer have a legally cognizable interest in the case's outcome, (3) the court can no longer grant the requested relief or otherwise affect the parties' rights or interests, or (4) any decision would constitute an impermissible advisory opinion." *Id.* (citing *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018)).

"A claim for mandamus relief under Section 552.321 becomes moot when the governmental body releases the requested information that is the subject of the action." *Muir*, 2023 Tex. App. LEXIS 4407, at *16 (citing *Gates v. Texas Dep't of Fam. & Protective Servs.*, No. 03-15-00631-CV, 2016 Tex. App. LEXIS 6598, at *13–14 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.)). Here, although the Office of the Governor produced some documents responsive to this request, American Oversight's claim for mandamus relief is based in part on the continued withholding of other documents responsive to the request. In this context, we conclude that the production of some responsive documents does not moot American Oversight's claims as to this request. *See id.* at *16–17 (holding that live controversy remained

22

and that case was not moot when governmental entity voluntarily produced some, but not all, requested records); *cf. Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 701 (Tex. App.—Austin 2013, no pet.) (concluding that case brought under PIA was moot when governmental body produced "*all* of the exhibits that had been the original focus of the parties' dispute") (emphasis added)).  We overrule Respondents' fourth issue.

## CONCLUSION

Having overruled Respondents' issues, we affirm the trial court's order.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   January 17, 2024